**NATIONAL LABOR RELATIONS BOARD**
**v. CLARK et al.**
**No. 9888.**

United States Court of Appeals
Third Circuit.

Argued April 7, 1949.

Decided Aug. 17, 1949.

Irving Herman, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Owsley Vose, Rosanna A. Blake, Attorneys, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Joseph J. Corn, Newark, N. J., for respondents.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

342

KALODNER, Circuit Judge.

In this proceeding, the National Labor Relations Board seeks enforcement of its order against the respondents, George H. and Mildred H. Clark, copartners trading as Clark Phonograph Record Co., requiring them to desist from activities found by the Board to be unfair labor practices. 78 N.L.R.B. 34. The respondents' defense consists of an attack on (1) the adequacy of the evidence to support the findings of the Board; (2) the authority of the Board to issue the order, and (3) the propriety, in a number of respects, of the order itself.

On May 10, 1946, the respondents entered into an exclusive bargaining agreement with the Clark Employees Association (hereinafter referred to as "Association"), an unaffiliated labor organization. On January 14, 1947, the United Electrical, Radio and Machine Workers of America, CIO (hereinafter referred to as "Union"), filed against the respondents charges of unfair labor practices within the meaning of Section 8(1) and (2) of the National Labor Relations Act of 1935, 49 Stat. 452, 29 U.S.C.A. § 158(1) and (2). Complaint was issued by the Board the same day. Hearings were held and an intermediate report was filed by the trial examiner on June 19, 1947, finding that the respondents had committed the violations alleged, and on June 30, 1948, the Board rendered its decision and order, substantially adopting the intermediate report.

The Board found: the respondent George Clark had threatened to close the plant when Union claimed majority representation and requested recognition; the respondents' supervisors took an active part in organizing the Association; their attorney drafted the certificate of incorporation for the Association and paid the incorporation fees; their bookkeeper used respondents' petty cash for the payment of the Association's bills.; they post-haste recognized the Association as the exclusive bargaining representative, in contrast with the requirement that Union prove its claim to majority representation; they granted a pay increase and a bonus under circumstances, which indicated to the employees that these benefits were obtained through the efforts of the Association; they granted authority to the Association to administer the bonus plan; and finally, they permitted the Association to solicit membership, during working hours, to post notices on the respondents' bulletin boards, and to use the respondents' supplies, telephone, and transportation facilities.

Upon these findings of fact, the Board concluded that the respondents had encroached upon the prohibition of Section 8(1) and (2) of the 1935 Act. We have carefully considered the whole record, and find substantial evidence to support these findings, and the conclusions of law dependent thereon. The content of the proscription of this section is, we believe, so firmly ingrained in our law that it is sufficient to say, without the necessity of citing the plethora of supporting authorities, that the activities of the respondents as described above amount to clear infringement of the statutory right to organize freely. It need only be said, in addition, that the unfair labor practices found to have existed continue within the ban of the Act as amended by the Labor Management Relations Act of 1947, 61 Stat. 136, 140, Section 8(a) (1) and (2), 29 U.S.C.A. § 158(a) (1) and (2), effective August 22, 1947.

It is upon Sections 10(b) and 9(f), (g) and (h) of the amended Act, 29 U.S.C.A. §§ 160(b), and 159(f), (g) and (h), that respondents premise their contention that the order of the Board was made without authority. Section 10(b) contains the proviso that " * * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces * * *." And Section 9(f), (g) and (h) provides that no investigation shall be made, no petition under Section 9(e) (1) shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under Section 10(b), nor shall any labor organization be eligible for certification as the representative of any employees unless

such labor organization, and the national or international group to which it belongs, comply with the requirements therein listed for the filing of certain information and non-communist affidavits. Noting these statutory prerequisites to Board action, the respondents assert that in this case the charge was filed by Union approximately eight months after the latest unfair labor practice alleged, no excuse admissible under the law being given, and that at least on this record, Union has not shown itself to have met the requirements by filing the proper reports and affidavits. With respect to the latter, the respondents urge that Congress, having denied the privilege of making a charge of unfair labor practices to non-complying unions, the Board should have refused to proceed further herein after the effective date of the amendments, and should not have issued the order in controversy.

We are not here concerned with the enjoinment of conduct formerly unlawful, but now lawful, nor with an order upon the respondents to bargain collectively with a non-complying union.[1] The unfair labor practices in which the respondents indulged are as unlawful today as they were under the Wagner Act. Since the brunt of the amendments, insofar as we are concerned, is borne on the phrase "no complaint shall be issued", and since the complaint here was lawfully issued by the Board before the effective date of the amendments, the respondents are in the position of asserting their application retroactively. On this score, both as to Section 10(b) and Section 9(f), (g) and (h), it has been consistently held that they are prospective: N.L.R.B. v. Caroline Mills, Inc., 5 Cir., 1948, 167 F.2d 212, 214; N.L.R.B. v. Gate City Cotton Mills, 5 Cir., 1948, 167 F.2d 647, 649; N.L.R.B. v. Brozen, 2 Cir., 1948, 166 F.2d 812, 813; N.L.R.B. v. Mylan-Sparta Co., 6 Cir., 1948, 166 F.2d 485, 487-488; N.L.R.B. v. National Garment Co., 8 Cir., 1948, 166 F.2d 233, 236-238, certiorari denied 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1768; N.L.R.B. v. Whittenberg, 5 Cir., 1947, 165 F.2d 102, 104-105. We are in agreement with the decision of these cases: the amended Act states in clear and particular terms the administration of the Congressional policy, and nothing, either in the Act or the legislative history[2] warrants the conclusion that actions like the present one should abate; rather, that policy can, and should be enforced, according to the procedure set forth in the statute.[3] Insofar as we are concerned, therefore, nothing in the new Act limits the authority of the Board to issue a proper order following valid proceedings. And the differentiating factor in this case, the issuance by the Board of its order after the effective date of the amendments, does not bring about a result contrary to that reached in the cases cited.

---

[1] Cf. N. L. R. B. v. Sandy Hill Iron & Brass Works, 2 Cir., 1947, 165 F.2d 660; N. L. R. B. v. Brozen, 2 Cir., 1948, 166 F.2d 812, respectively.

[2] The Congress did have before it a provision which, if enacted, would have subjected pending proceedings to the requirements of Sections 10(b) and 9(f), (g) and (h). Thus, Section 102(b) of H.R. 3020, as it passed the House, proposed to abolish the National Labor Relations Board, and Section 102(c) proposed to limit the maintenance of pending proceedings, transferred to the Labor-management Relations Board, to those which might have been initiated under the new Act. H.R. 3020, 80th Cong., 1st Sess., April 17, 1947; H.Rep.No.245, 80th Cong., 1st Sess., p. 45. But H.R. 3020, as it passed the Senate, 80th Cong., 1st Sess., May 13, 1947, did not attempt to abolish the National Labor Relations Board, and Section 102 thereof, coinciding with Section 102 in S. 1126, 80th Cong., 1st Sess., stated, inter alia, that "No provisions of this title shall be deemed to make an unfair labor practice any act which was performed prior to the date of enactment of this Act which did not constitute an unfair labor practice prior thereto * * *." H. Conference Rep. No. 510, 80th Cong., 1st Sess., p. 61. This provision is, of course, incorporated in the present law: 61 Stat. 152, § 102, 29 U.S.C.A. § 158 note.

[3] See note 1, supra. Until Union has complied with the filing requirements of Section 9(f), (g) and (h), its efforts at the respondents' p'ant cannot result in certification as exclusive bargaining agent.

344

The respondents' remaining contentions relate to the proper form of the order and the notice which the Board has required to be posted. The notice takes the usual form, and we do not construe it as constituting a public admission by the respondents of guilt. It is in terms an explicit assurance for the future that the respondents will refrain from specified prohibited behavior. The Board, it is well-settled, has wide power to prescribe the remedy appropriate to redress unfair labor practices. N.L.R.B. v. Falk Corp., 1940, 308 U.S. 453, 462, 60 S.Ct. 307, 84 L.Ed. 396; N.L.R.B. v. American Laundry Machine Co., 2 Cir., 1945, 152 F.2d 400, 401; N.L.R.B. v. Landis Tool Co., 3 Cir., 1944, 145 F.2d 152, 157. We have also held that it is not improper to include the name of the charging union in the notice: N.L.R.B. v. Arton Studios, Inc., 3 Cir., 1948, 168 F.2d. 521 (per curiam); N.L.R.B. v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39, 51.

Finally, the respondents urge that the notice should contain a statement that the employees are free to refrain from joining any labor organization. To this, the Board has, in effect, agreed.[4] Accordingly, there should be substituted for the last sentence of the notice a new sentence to read: "All our employees are free to become, remain, or refrain from becoming members of this union or any other labor organization, whether or not affiliated with a national or international labor organization, except to the extent that the right to refrain may be affected by a lawful agreement requiring membership in a labor organization as a condition of employment." This sentence, moreover, adequately disposes of the respondents' suggestion that the notice of disestablishment of the Association "or any successor thereto" might be interpreted by employees as discouraging their freedom of self-organization.

We find the balance of the respondents' objections to be without merit, and, accordingly, for the reasons stated, a decree will be entered enforcing, consistent with this opinion, the order of the Board.

[4] Brief of the National Labor Relations Board, p. 36; Matter of Sebastian Kresge, 80 N.L.R.B. 72.