**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FLEMINGSBURG MANUFACTURING CO., Respondent.**

No. 14668.

United States Court of Appeals Sixth Circuit.

March 21, 1962.

Samuel M. Singer, Atty., N.L.R.B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Marcel Mallet-Prevost, N.L.R.B., Washington, D. C., on the brief), for petitioner.

Douglas G. Cole, Cincinnati, Ohio (Lloyd A. MacDonald, Asa R. Little, Jr., Flemingsburg, Ky., on the brief), for respondent.

Before O'SULLIVAN, Circuit Judge, and DARR and THORNTON, District Judges.

PER CURIAM.

This matter involves enforcement of an Order of the NLRB entered May 12, 1961, whereby the respondent, Flemingsburg Manufacturing Company of Flemingsburg, Kentucky, was ordered to cease and desist from certain practices found to be violative of Section 8(a) (1) of the National Labor Relations Act. The violation found by the trial examiner, and affirmed by the Board, consisted of the interrogation by the respondent's plant manager of several of its employees concerning their membership in, and activities in connection with, a Union, to wit: Amalgamated Clothing Workers of America, AFL-CIO. This union had been attempting to organize respondent's employees.

In 1959, an organizer for the AFL-CIO Union arrived in Flemingsburg and began its organizing efforts. In March and May of 1960, respondent's plant manager called two meetings of its employees, at which he discussed the activities of the Union organizer. It is undisputed that the plant manager announced to the employees that if the AFL-CIO Union came into the plant, there was a possibility that it would have to be closed down. Respondent company was a small company whose sole operation consisted of cutting and processing materials for a Cincinnati concern which manufactured overalls. The material was shipped from Cincinnati to Flemingsburg and after processing was returned to the Cincinnati company. It was stated by the plant manager that if the Union came into the Flemingsburg plant, causing increased labor costs, there would be no purpose in the Cincinnati company continuing to send its work to Flemingsburg. The plant manager also stated that if the Flemingsburg plant did not join up with the AFL-CIO, and their competitors did, Flemingsburg might profit thereby. The trial examiner, however, exonerated respondent from any violation because of such statements. He held that they were the exercise of free speech without threats of reprisal, and that they were not coercive in nature, (§ 158(c), Title 29, U.S.C.A.).

In May, 1960, the AFL-CIO Union filed a petition for a representation election. During June, 1960, respondent's plant manager, Hazelrigg, called in four of respondent's employees and interrogated them concerning their activities in connection with the efforts of the AFL-CIO to organize the plant. In these talks, the manager, to some extent, expressed his belief that organization by the AFL-CIO might necessitate the closing of the plant. Hazelrigg stated to Burke, one of the questioned employees, that it looked to him as if Burke and his wife, who was also an employee, were "making decent money" and further "it looks to me like what you and your wife are drawing would be better than nothing." Hazelrigg had heard that another employee had been obtaining signatures for union authorization cards. She was called in and was asked whether she had started the union activities. The trial examiner found that Hazelrigg, by his inquiries of the mentioned employees, sought to find out if they were working for the AFL-CIO Union. The examiner did not make specific findings as to just what parts of the conversations testified to were accepted by him as controlling. From it all, however, he did find that "By interrogating employees as to their union activities and sympathies, thereby interfering with, restraining, and coercing them in the exercise of their rights guaranteed by Section 7 of the Act,

Respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a) (1) of the Act."

At the time of the activities mentioned, the employees of respondent were members of an independent union known as Needleworkers Association of America, Independent. No employees were discharged in connection with the AFL–CIO Union activities and, presumably, the latter union withdrew its efforts to be certified as bargaining agent for the respondent's employees.

■ Certainly the case made against the respondent company could not be characterized as a strong one. If triers of the facts, we might, indeed, come to a different conclusion than did the Board and its examiner. On this review, however, such is not our prerogative. We are limited to a determination of whether or not there was substantial evidence on the record, considered as a whole, to support the findings of the Board, § 160(e), Title 29, U.S.C.A.; N. L. R. B. v. Nabors, 196 F.2d 272, 275 (CA 5); N. L. R. B. v. Ford, 170 F.2d 735, 739 (CA 6); Old King Cole v. N. L. R. B., 250 F.2d 791 (CA 6). Interrogation of employees as to their membership in the union that is seeking to organize the employer's plant is not, per se, a violation of Section 8(a) (1). N. L. R. B. v. Tennessee Coach Co., 191 F.2d 546, 555 (CA 6, 1951); N. L. R. B. v. Armco Drainage & Metal Products, Inc., 220 F.2d 573, 583 (CA 6, 1955). However, in determining whether it is or is not, the trial examiner and the Board have a right to consider the background of such inquiries, the time and manner of their being made, and all of the surrounding circumstances to conclude whether or not such interrogation had the coercive char-

acteristics proscribed by the mentioned section of the Act. United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430 (CA 6). The plant manager's announcement to all of respondent's employees that successful organization of them by the AFL–CIO Union might result in closing the plant, was held permissible. Such conduct, however, could properly be considered in determining whether the later questioning of four employees in the manager's effort to find out who started, and who were leaders in, the union activities, was impliedly coercive. N. L. R. B. v. Midwestern Instruments, Inc., 264 F.2d 829, 831 (CA 10, 1959). We are unable to say that there was not substantial evidence to support the findings and conclusions of the trial examiner in this regard. We are, therefore, not at liberty to set aside the Board's order affirming such findings.

■ Respondent objects to the Board's order to the extent that it requires that the notice to be given to employees contain, with other matters, a statement, "We will not *in any like or related manner* interfere with, restrain, or coerce our employees in the exercise of their right to self-organization. * * *" The phrase "in any like or related manner" followed specific reference to interrogation concerning membership in, or activities on behalf of, the AFL–CIO Union. We do not think that the words, "in any like or related manner" expand the prohibition beyond the activities which were found to have been violative of the Act. We likewise find no impropriety in the identification by name of the AFL–CIO Union in the notice required to be posted. N. L. R. B. v. Clark, et al., 176 F.2d 341, 344 (CA 3, 1949).

Enforcement of the Board's order is decreed.