NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ELECTRIC STEAM RADIATOR CORPORATION, a Subsidiary of Landers, Frary and Clark, Respondent.

No. 15062.

United States Court of Appeals
Sixth Circuit.

Aug. 28, 1963.

Allison W. Brown, Jr., N.L.R.B., Washington, D. C., for petitioner.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., Washington, D. C., on the brief.

James S. Wilson, Jr., Paris, Ky., for respondent.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The National Labor Relations Board seeks enforcement of its order of April 9, 1962, in which it found that the respondent, Electric Steam Radiator Corporation, violated Sections 8(a) (1) and 8(a) (3) of the National Labor Relations Act by reason of the way it handled the customary Christmas bonus in December 1959. The Board ordered the respondent to cease and desist from discouraging membership in International Union, Allied Industrial Workers of America, AFL–CIO, hereinafter referred to as the Union, by refusing to pay the regular annual bonus customarily paid to its non-supervisory production and maintenance employees at its plant in Paris, Kentucky. The order affirmatively directed respondent to pay to such employees the bonus for Christmas 1959, to be computed in the same manner as the bonus for Christmas 1958, and to send to each of such employees a copy of a notice to that effect.

Respondent is a Kentucky corporation engaged in the manufacture and sale of electrical and related products. Its office and principal place of business was at Paris, Kentucky. About May 1955 it became a wholly owned subsidiary of Landers, Frary and Clark, hereinafter referred to as Landers. Landers has its main office in New Britain, Connecticut, and owns four American and two foreign operating subsidiaries in addition to respondent. At the time herein involved, Landers' representative, Mr. Edward C. Schmid, was in control of respondent's operations as General Manager.

Employees at respondent's operation were grouped into four classes: produc-

tion and maintenance, production supervisory, office and clerical, and semi and senior executives. The total number of employees was about 126 in December 1956. The number had grown to about 235 by the end of 1959 but thereafter declined to about 50 or 55 about April 1960.

Respondent's principal product was a portable room-sized steam radiator operated by plugging into an ordinary wall electrical socket. In addition, it manufactured a vaporizer, a bottle warmer, two types of fry pans and certain plastic items. The company had a very good year in 1956. Its dreams for 1957 did not materialize, although it had a good year. It had a very good year in 1958 with bright prospects for 1959. In December 1959 the respondent experienced for the first time a heavy return of radiators. Also, about the same time Rexall Drug Company, a purchaser of vaporizers, advised that it would no longer purchase vaporizers from the company because it did not have the type the Drug Company wanted to handle. Sears, Roebuck, the company's largest customer for aluminum fry pans, cancelled substantial orders. The bottle warmer was an accommodation item, or loss leader, with the company losing money on every one it manufactured. Notwithstanding the relatively bleak economic outlook in December 1959, the respondent was financially capable of meeting normal demands upon it. The company discontinued manufacturing operations shortly after January 1, 1961.

The Union was successful in a Board-conducted election held December 9, 1959, and was certified as a representative of the production and maintenance group on December 17, 1959. Bargaining meetings commenced January 20, 1960.

For a period of at least ten years prior to the Christmas of 1959 it had been the respondent's custom to give its employees a Christmas bonus. In most cases the bonus was based on length of service and ranged from a minimum of $5.00 to $20.00 or $25.00. In some cases it was as high as $100.00. In December 1959 the respondent did not advise either the employees or the Union that it would not pay the Christmas bonus that year. On December 24, 1959, the bonus was paid to office and supervisory employees but not to the production and maintenance employees. The bonus payment totaled about $340.00.

An employee, Ward Tomlin, a maintenance electrician, inquired of Schmid about 11 A.M. on December 24, 1959, after he had quit work and had been paid, but had not received a Christmas bonus, whether or not the customary bonus would be paid. Schmid answered that the bonus would not be paid because the Union had organized the plant, that those who supported the company's position would have to suffer for the act that the Union was elected as the bargaining agent, and that that was what the employees got "for voting for the damn Union."

Following its certification on December 17, 1959, the Union requested the company to set a date for bargaining. Negotiations began in January 1960. At the first meeting the Union raised the question of the 1959 bonus, but the company stated that it was part of the economic issues and it would discuss it at a time when those issues came up in the contract. A number of meetings followed, in each of which the bonus issue was brought up by the Union, but the company continued in the position that it was an economic issue and would be discussed with those issues later. On April 11, 1960, the Union filed a charge with the Board alleging the withdrawal of the bonus to be an unfair labor practice. A Board hearing on the charge was scheduled for July 11. A few days prior thereto the company proposed to the Union that it would pay the 1959 bonus provided that there would be no obligation on the part of the company to pay any bonus in the future, that the Union would withdraw its unfair labor practice charge against the company, that the Union would agree to the company's proposals on all of the remaining unresolved issues in the contract, and

that the proposal be accepted prior to July 11, which was the date set for the Board hearing on the Union charges. The Union considered the proposition and advised the company that it would not accept it. Accordingly, the offer was withdrawn. A collective bargaining agreement was signed on September 3, 1960. It contained no reference to the 1959 Christmas bonus or any other bonus.

■ Section 8(a) (1) of the Act, Section 158(a) (1), Title 29 United States Code, makes it an unfair labor practice for an employer to interfere with or coerce employees in the exercise of their right to join a labor organization and to bargain collectively through representatives of their own choosing. The Trial Examiner found that the remarks of Mr. Schmid in answer to the question why the Christmas bonus was not being paid to the production and maintenance employees were not coercive and did not constitute a violation of Section 8(a) (1) of the Act. However, it was the finding of the Board that the remarks were coercive in nature and constituted a violation of that section of the Act. We agree with the Board on this issue in the case.

■ Statements by a supervisory employer in the nature of a threat to prevent unionization of employees constitutes a violation of Section 8(a) (1) of the Act. This is so even though the statements may not be directly coercive, if they could be reasonably so construed by the employee. N. L. R. B. v. Peterson, 157 F.2d 514, 515, C.A.6th, cert. denied, 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285; United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430, C.A.6th; N. L. R. B. v. Flemingsburg Mfg. Co., 300 F.2d 182, 183, C.A.6th; N. L. R. B. v. Bendix Corporation (Research Laboratories Division), 299 F.2d 308, C.A.6th, cert. denied, 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed. 2d 65.

This principle is applicable to statements in the nature of a threat to withhold bonus benefits if the employees embrace unions unpalatable to management. N. L. R. B. v. Roure-Dupont Mfg., Inc., 199 F.2d 631, 634, C.A.2nd; N. L. R. B.

v. Bird Mach. Co., 161 F.2d 589, 591, C.A.1st; N. L. R. B. v. Winona Knitting Mills, 163 F.2d 156, 160–161, C.A.8th; R. R. Donnelley & Sons Co. v. N. L. R. B., 156 F.2d 416, 418, C.A.7th, cert. denied, 329 U.S. 810, 67 S.Ct. 624, 91 L.Ed. 692.

■■ We recognize that the remarks of Mr. Schmid were with reference to past events and made no mention of future action of a coercive nature by the company. But it was reasonably subject to the inference that action of a similar nature would be taken in the future if the employees continued with union activities. As we stated in N. L. R. B. v. Ford, 170 F.2d 735, 738, C.A.6th, it is unnecessary to show that any employee was in fact intimidated or coerced by the statements made; that it is impossible to estimate the effect of such antiunion activities on employees generally; and the reasonable inference is that it does have an adverse effect on self-organization and collective bargaining. Reasonable inferences to be drawn from the statements of an employer are for the Board to determine, rather than by the Court. N. L. R. B. v. Mt. Clemens Pottery Co., 147 F.2d 262, 266, C.A.6th; N. L. R. B. v. Bendix Corporation, etc., supra, 299 F.2d 308, 310, C.A.6th; N. L. R. B. v. Flemingsburg Manufacturing Co., supra, 300 F.2d 182, 184, C.A.6th.

Section 8(a) (3) of the Act, Section 158(a) (3), Title 29 United States Code, makes it an unfair labor practice for an employer to encourage or discourage membership in any labor organization "by discrimination in regard to * * * any term or condition of employment."

■ Both the Trial Examiner and the Board found that the Christmas bonus had become a part of the employees' wages and thus constituted a term or condition of employment within the meaning of Section 8(a) (3). They, accordingly, rejected respondent's contention that the payment of the bonus was a "gift," the making of which was entirely optional and not within the scope of bargaining, as required by the statute. It is recognized that gifts per se—payments which are in fact not compensation for

services—are not terms or conditions of employment, and that an employer can make or withhold such payments as he pleases, but where so-called gifts are so tied to the remuneration which employees receive for their work that they are in fact a part of it, they are in reality wages within the meaning of the statute. This is a question of fact, and if the Board's finding to that effect is supported by substantial evidence, the finding must be accepted on this review. N. L. R. B. v. Niles-Bement-Pond Co., 199 F.2d 713, 714, C.A.2nd; N. L. R. B. v. Wheeling Pipe Line, 229 F.2d 391, 394–395, C.A. 8th; Singer Mfg. Co. v. N. L. R. B., 119 F.2d 131, 136, C.A.7th, cert. denied, 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549. Under the circumstances relative to the payment of the bonus in this case over a period of years, we accept the findings of the Trial Examiner and the Board that the Christmas bonus was not a gift but was in fact a term or condition of employment.

 The facts in this case show discrimination against the maintenance and production employees in the payment of the Christmas bonus. But discrimination alone is not enough. "The unfair labor practice is for an employer to encourage or discourage membership by means of discrimination. * * * only such discrimination as encourages or discourages membership in a labor organization is proscribed." Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N. L. R. B., 347 U.S. 17, 42–43, 74 S.Ct. 323, 336–337, 98 L.Ed. 455. Motivation of the employer in such discrimination is the important factor. But, it is also clear that specific evidence of intent to encourage or discourage is not an indispensible element of proof of violation of Section 8(a) (3). Proof of certain types of discrimination satisfies the intent requirement. Where the employer's conduct is such that it inherently encourages or discourages union membership, intent is sufficiently established. An employer's protestation that he did not intend to encourage or discourage union membership is unavailable where a nat-

ural consequence of his action was such encouragement or discouragement. Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N. L. R. B., supra, 347 U.S. 17, 44–45, 74 S.Ct. 323, 98 L.Ed. 455; Local 357, Int'l Brotherhood of Teamsters', Chauffeurs, Warehousemen & Helpers of America v. N. L. R. B., 365 U.S. 667, 675, 81 S.Ct. 835, 6 L.Ed.2d 11.

The Trial Examiner was of the view that the discrimination here involved was not of the type that inherently encouraged or discouraged union membership, and since he did not find independent proof of antiunion motivation, he recommended dismissal of the charge. The Board, with one member dissenting found that the statements of General Manager Schmid to employee Tomlin on December 24, 1959, clearly demonstrated that the respondent denied the bonus to its production and maintenance employees because they had voted for the Union, which constituted a violation of Section 8(a) (3) of the Act.

The respondent denies that antiunion motivation on its part was the reason for its failure to pay the bonus. Affirmatively, it contends that Mr. Schmid consulted with an experienced labor attorney in Lexington, Kentucky, who advised him that he could not make such payments to the union employees without running the chance of being accused of an unfair labor practice; that, nevertheless, Mr. Schmid recommended that the bonus be paid; that the decision was made at the New Britain, Connecticut, office of the parent company, Landers, where the company's legal counsel concurred in the opinion of the Lexington attorney; that the reason for deciding not to pay the bonus was an economic one based on the unfavorable prospects confronting the company; that subsequent developments proved that this decision was fully justified; and that no bonus was paid that year at either the parent company or any of the subsidiaries.

For the most part, these factual contentions are supported by the evidence. But, as the Board points out, there is

real doubt that respondent failed to pay the bonus because of the possibility of being charged with an unfair labor practice. Following the certification of the Union on December 17, 1959, there was an opportunity to discuss this matter with the Union before taking action on December 24. Not only was this opportunity passed up, but the bargaining negotiations later show no real desire on the part of the respondent to pay or even discuss the prompt payment of the 1959 bonus. The collective bargaining agreement, finally signed on September 3, 1960, contained no reference to the 1959 Christmas bonus.

In any event, even accepting respondent's contention that these were reasons why the bonus was not paid, it in no way establishes the fact that these were the only reasons. In addition to such reasons, antiunion motivation could also have been a material contributing reason. It is not necessary that antiunion motivation be the only reason for the discriminatory action complained of. It is sufficient if it is a substantial reason, despite the fact that other reasons may also exist. N. L. R. B. v. Whitin Machine Works, 204 F.2d 883, 885, C.A.1st; Butler Bros. v. N. L. R. B., 134 F.2d 981, 985, C.A.7th, cert. denied, 320 U.S. 789, 64 S.Ct. 203, 88 L.Ed. 475.

Respondent relies upon Intermountain Equipment Co. v. N. L. R. B., 239 F.2d 480, 483, C.A.9th; N. L. R. B. v. Crosby Chemicals, Inc., 274 F.2d 72, 77–78, C.A.5th, and N. L. R. B. v. Nash-Finch Co., 211 F.2d 622, 45 A.L.R.2d 683, C.A.8th, in which cases it was held that discrimination against union employees was not a violation of Section 8(a) (3) of the Act.

The Board in support of its contention that the discrimination was an unfair labor practice relies chiefly upon Armstrong Cork Co. v. N. L. R. B., 211 F.2d 843, C.A.5th; Allis-Chalmers Mfg. Co.

v. N. L. R. B., 162 F.2d 435, 440, C.A.7th, and General Motors Corp. v. N. L. R. B., 150 F.2d 201, C.A.3rd, enforcing 59 N.L.R.B. 1143.

The ruling in each of these various cases cited by the respective parties depends mainly upon the particular facts of each case. Antiunion motivation may be found to exist in a certain case, and not to exist in another. Whether it exists in a particular case is a factual question for the Board to decide. In doing so, it may infer from the proven facts such conclusions as reasonably may be based thereon. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 800, 65 S.Ct. 982, 89 L.Ed. 1372.

We cannot say that giving due consideration to the conversation between General Manager Schmid and employee Ward Tomlin on the morning of December 24, the finding of the Board that the respondent was actuated by antiunion motivation in not paying the 1959 Christmas bonus is not supported by substantial evidence on the record considered as a whole. N. L. R. B. v. Flemingsburg Manufacturing Co., supra, 300 F.2d 182, 184, C.A.6th; N. L. R. B. v. Bendix Corporation, etc., supra, 299 F.2d 308, 310, C.A.6th.

The fact that the respondent discontinued its operation at Paris, Kentucky, and is now no longer engaged in business does not require that a decree of enforcement of the Board's order be denied. Irrespective of the ability of the respondent to comply with the order, a decree of enforcement is a vindication of the public policy of the statute and should be entered. N. L. R. B. v. Acme Mattress Co., 192 F.2d 524, 528, C.A.7th; N. L. R. B. v. Lamar Creamery Co., 246 F.2d 8, 10, C.A.5th; N. L. R. B. v. Dixon, 184 F.2d 521, C.A.8th.

A decree of enforcement will be entered.