**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**EXCHANGE PARTS COMPANY, Rebuilders Service Company, and Southwest Shoe Exchange Company, Respondents.**

No. 21204.

United States Court of Appeals Fifth Circuit.

Jan. 5, 1965.

---

Melvin Pollack, Atty., N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, A. Brummel, Atty., N. L. R. B., for petitioner.

Karl H. Mueller, Harold E. Mueller, Fort Worth, Tex., Jean Allard, Chicago, Ill., for respondents, Mueller & Mueller, Fort Worth, Tex., of counsel.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

The Board seeks enforcement of its order against respondents, three affiliated corporations. The Board found that respondents refused to bargain collectively with the Union in violation of Section 8(a) (5) and (1) of the Act, by refusing to meet and confer with the Union at reasonable times and intervals concerning negotiation of a contract, by unilaterally laying off employees, and unilaterally withholding an annual Christmas bonus.

The Union, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO, Subordinate Lodge No. 96, was certified as the bargaining representative of respondents' employees, following an election, on July 3, 1961. There had been some layoffs for economic reasons on June 28, as a result of which union representative Scott called respondents' bargaining representative to advise him that he wanted to be advised of any future layoffs. On July 10, Scott sent a letter confirming this conversation and requested that respondents meet and discuss with him any contemplated layoffs.

Respondents laid off six more employees on July 12, without notifying the Union that it contemplated such action. Scott protested, and respondents' representative, Mueller, undertook to find out the facts of the layoff. On July 25 Mueller called Scott and suggested that they meet on the 26th regarding some additional layoffs. This meeting was held and the company representative said that as inventories were outrunning sales, they had to lay off additional employees, but that except for a small group of piece workers the layoffs would be effective pursuant to seniority. He gave Scott a list of employees, their departments, rates of pay and hiring dates, and marked the names of 23 employees to be laid off. They were laid off a few hours later.

We conclude that the Board was justified in finding that such unilateral action in the face of requests for an op-

portunity to discuss proposed layoffs frustrated the statutory objective of establishing working conditions through bargaining. N. L. R. B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230. See N. L. R. B. v. Brown-Dunkin Co., 10 Cir., 287 F.2d 17, commenting on the lack of realism in giving a few hours' notice of contemplated action, which involved the possible loss of jobs to a number of the employees. The Union was simply denied a reasonable opportunity for making a counter proposal of any type. We conclude that this conduct could properly be found by the Board to be in violation of Section 8(a) (5) of the Act.

■ The examiner found, and the Board accepted the finding, that for some ten years the respondents had paid a Christmas bonus. Apparently this bonus was substantial, since the company stated in a paper circulated to the employees that it had averaged over $125 per employee. The Board also found that a determination was made by respondents in January, 1961, some six months before the Union was certified, to cancel the bonus for 1961. This was done at a time when organizational efforts were underway, but before the election was held. Following certification, bargaining sessions commenced and were held during the remaining months of the calendar year 1961. In the March issue of the company paper there was listed among the benefits enjoyed by the employees, an item spoken of as "a generous Christmas bonus," which "you now, as an employee * * * enjoy."

Testimony of respondents was to the effect that the inclusion of this item in March, 1961, was an error. Nevertheless, the error was permitted to stand and the company made no efforts to disabuse the minds of the employees as to the availability of this bonus as one of their benefits. At no time during the bargaining sessions following the certification in July was the subject of Christmas bonuses raised by either party.

In N. L. R. B. v. Citizens Hotel Co., 5 Cir., 326 F.2d 501, dealing with a somewhat similar unilateral termination of a bonus, we stated: "There was, therefore, an impermissible unilateral change constituting a failure to bargain." 326 F.2d 501, 505.

Respondents here contend that a difference exists in that in the Citizens Hotel Company case the determination to end the bonus was made after the certification of the Union. On this point we stated: "Whether this meeting with its no-bonus announcement preceded or followed the October 6, 1961, Board certification of the Union is not clear. The Examiner fixed it after, but we doubt that it matters. Management was aware, of course, of the results of the recent election and this was enough to trigger anti-union action if that was the real motive. And as to bargaining, the long time remaining between October and December 20–25 could substantiate an obligation on the Employer's part at least to reconsider the decision."

Of course, here it is understandable that the Union would not wish to suggest for bargaining a benefit which the company had recently informed its employees that it was theirs to enjoy. We conclude, as suggested in the Citizens Hotel Company case, that under circumstances here present this was such unilateral change as to constitute a failure to bargain in good faith. It was thus a violation of Section 8(a) (5).

■ Respondents criticize the Board's order requiring payment of the 1961 Christmas bonus as a part of the enforcement order. There is no question raised here as to payment of any bonuses after the year 1961. The enforcement order required the payment for 1961 and left the matter open for bargaining with respect to subsequent years.

Everything said by us in N. L. R. B. v. Citizens Hotel Company, supra, carried the clearest implication of our conclusion that Section 10(c) of the Act, 29 U.S. C.A. § 160(c), warranted an order requiring payment of the bonus in a case such as this, as "such affirmative action * * * as will effectuate the policies of this subchapter," the language of the

Act dealing with remedies. We decided in that case that the Board's order of payment of the Christmas bonus should not be enforced because of the particular circumstances of that case, largely because it was apparent that the bonus had for some time been paid out of capital since the Hotel Company was operating at an annual loss, but also largely because we found no other conduct showing anti-union motivation. See 326 F.2d 501, 506.

The Supreme Court in N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377, has stressed the function of the Board in effectuating the policies of the Act in arriving at the remedy. The Court there said:

"Section 10(c) of the Taft-Hartley Act, under which the Board made its award, derives unchanged, so far as is now relevant, from the National Labor Relations (Wagner) Act. 49 Stat. 449, 454. It charges the Board with the task of devising remedies to effectuate the policies of the Act. Of course, the remedies must be functions of the purposes to be accomplished, and in making back pay awards, the Board operates under a further limitation. * * * Subject to these limitations, however the power, which is a broad discretionary one, is for the Board to wield, not for the courts."

Dealing, as it did in that case, with a back pay award which was under attack, the Court then said:

"In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience. When the Board, 'in the exercise of its informed discretion,' makes an order of restoration by way of back pay, the order 'should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 540 [63 S.Ct. 1214, 1218, 87 L.Ed. 1568]."

In the Citizens Hotel case we stated, "We recognize, of course, that there are circumstances in which, to effectuate the dominant policy of collective bargaining in good faith, a restitution order is permissible or required," citing Town & Country Mfg. Co. v. N. L. R. B., 5 Cir., 1963, 316 F.2d 836, 847; N. L. R. B. v. Intracoastal Terminal, Inc., 5 Cir., 1961, 286 F.2d 954, 959; N. L. R. B. v. Electric Steam Radiator Corp., 6 Cir. 1963, 321 F.2d 733, 738; East Bay Union of Machinists Local 1304 v. N. L. R. B., 1963, 116 U.S.App.D.C. 198, 322 F.2d 411, 415; N. L. R. B. v. Central Illinois Public Service Co., 7 Cir. 1963, 324 F.2d 916.

We think the Seventh Circuit case of N. L. R. B. v. Central Illinois Public Service Co., which we cited with approval, supra, is of special significance here, since the restitution order there required the payment to employees of what amounted to a cash bonus in the nature of substantial discounts from the service charges on their power bills which the company unilaterally cancelled.

■ Respondents appear not to challenge that part of the Board's order based on its findings that they adopted "delaying tactics in connection with the scheduling of meetings." The record shows that only an average of 8 hours per month were consumed with negotiations during a period of 8 months covered by the record. It is plain that the negotiations were carried on primarily on behalf of respondents by a busy and successful lawyer, Mr. Harold Mueller. It is understandable that in a busy law practice some difficulty arises in giving as prompt consideration to the requests of a representative of the opposing side as would entirely satisfy the latter. Nevertheless, we conclude that the inherent difficulty arising when a lawyer in full practice represents the employer in bargaining sessions, does not exempt the employer from the normal requirements that nothing be done for the purpose of stifling an opportunity for discussion. There remains on the employer the posi-

tive legal duty to meet and confer with the Union at reasonable times and intervals.

 Having concluded that the Board was warranted on the record before it to find that there were violations of Section 8(a) (5) and (1), and that the remedy in the nature of payment of the Christmas bonus in the amounts set up on the books of the company in anticipation of the payment of such bonus, fell within the authority of Section 10(c) of the Act, we conclude that the Board's order must be enforced.