**STARK CERAMICS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 17008.**

United States Court of Appeals
Sixth Circuit.

April 6, 1967.

HOGAN, District Judge.

This cause is before this Court upon petition of Stark Ceramics, Inc. (Stark) to review and set aside an Order of .the National Labor Relations Board (Board) and upon the Board's cross-petition to enforce the Order. The Board's Decision and Order were issued November 30, 1965, and are reported at 155 NLRB No. 120. The Court has jurisdiction, the alleged unfair labor practices having occurred in East Canton, Ohio, within this judicial circuit. Section 160(e), Title 29 U.S.C.

The Board found that the Company violated Section 8(a) (1) (§ 158(a) (1), Title 29 U.S.C.) of the Act by threatening its employees with loss of benefits or loss of employment if they selected the Union (United Brick and Clay Workers of America, AFL–CIO) as their bargaining representative, by interrogating applicants for employment and newly hired employees about their union affiliations, by assaulting an employee who was engaged in peaceful picketing of Stark's premises, and by dealing with individual strikers rather than through their Union in an effort to persuade them to abandon an "unfair labor practice" strike and return to work. The Board also found that the Company violated Section 8(a) (3) and (1) (§ 158(a) (3) and (1), Title 29 U.S.C.) of the Act by withholding the annual Christmas bonus and length of service bonus from its employees because they selected the Union as their collective bargaining representative. Additionally, the Board found that Stark violated Section 8(a) (5) and (1) (§ 158(a) (5) and (1), Title 29 U.S.C.) of the Act by withholding those bonuses from its employees without bargaining on the matter beforehand with the Union; by entering into negotiations with the Union with a preconceived determination not to reach agreement; and by conditioning its proposals upon the Union's dropping the unfair labor practice charges that had been filed with the Board.

---

Charles R. Iden, Akron, Ohio, for petitioner.

Alan D. Eisenburg, National Labor Relations Board, Washington, D.C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel 'Mellet-Prevost, Asst. Gen. Counsel, Bernard Cushman, Anthony J. Obadal, Attys., National Labor Relations Board, Washington, D. C., on the brief.

Before PHILLIPS, Circuit Judge, CECIL, Senior Circuit Judge, and HOGAN, District Judge.*

* Honorable Timothy S. Hogan, United States District Judge for the Southern District of Ohio, sitting by designation.

The Board's Order of November 30, 1965, directed the cessation by petitioner of nine practices and mandated affirmative action in six respects. Since that time Stark has bargained with and entered into a contract with the Union and has otherwise fully complied with the Board's Order in all respects, save one, i. e., the Order for payment in full of the above bonuses for the year 1964; so that Stark's review is limited to that part of the Board's Order directing the payment of the bonuses and interest for 1964 and poses the single question of the validity of the Board's Order in that respect. However, and preliminarily, the Board is entitled to a decree enforcing the remainder of its Order, even though the remaining parts of the Order have been complied with. NLRB v. Heck's Inc., 369 F.2d 370 (C.A. 6th 1966); NLRB v. Toledo Desk & Fixture Co., 158 F.2d 426 (6th Cir. 1946); NLRB v. Oertel Brewing Co., 197 F.2d 59 (6th Cir. 1952); NLRB v. Globe Wernicke, etc., Inc., 336 F.2d 589 (6th Cir. 1964). We do note from the Board's Order that the question before this Court concerning the bonuses arose not as an isolated one, but in an aura of substantial anti-union activity.

Beginning in December, 1944, with respect to the Christmas bonus, and in December, 1950, with respect to the Service Award bonus, and in each December respectively thereafter, to and including 1963, Stark paid to its factory employees two bonuses graduated according to length of service. The maximum aggregate per annum to any one individual was about $600.00. The bonuses were separately announced each December with the cautionary statement that they could be paid only out of profits and that no precedent was intended for future years. In the nine years before 1963 the annual operating net profit of the Company before "income taxes, bonuses or profit sharing" averaged over $650,000 a year. Stark's sales and production dropped sharply in 1963–64 in line with a general industry (structural facing tile) downtrend which had commenced in 1958 and

which Stark avoided until 1963. Stark's net operating profit before income taxes, bonuses and profit sharing for 1962 was $639,000; for 1963 there was a loss of approximately $40,000; for 1964 there was a profit of approximately $86,000. Stark received a net clay depletion refund in 1963 of approximately $145,000, of which about $30,000 represented interest. Stark considered the total depletion refund as a "profit" for bonus purposes in 1963, but at least technically, practically the entire bonus for 1963 was paid out of surplus and not out of net operating profit. The bonuses involved in this case (to which we shall refer hereinafter in the singular) amounted to approximately $88,000 in 1963. The amount required to pay the 1964 bonus, as ordered by the Board and as computed in Stark's ordinary methods, is $87,975 (practically the same as the amount required in 1963) some $1,549 more than the operating net profit of the Company for 1964, which amounted to $86,426.80.

For some years prior to 1964, the Union had made unsuccessful efforts to become the bargaining representative of Stark's employees. Elections were held in March of 1961 and again in February of 1964. In the campaigns before each election, Stark emphasized the bonus to its employees as a "campaign plank." Responsible Company officials, by letter and orally, repeatedly called attention to "the unique year end bonus," referred to it as "as much a part of the earnings as the rest of wages." The estimated cost of the bonus was accrued periodically through the calendar year by Stark, including the calendar year 1964. On February 25, 1964, while the Company was in the midst of the worst financial quarter in its history, insofar as disclosed by the record before us, a Company vice president, in his letter to each employee, pointed to the bonus as one of the benefits enjoyed by the employees without a union and indicated "1964 looked like a good business year." This was two days before the election of February 27, 1964, won by the Union by

a narrow margin. The Union was finally certified on September 29, 1964. During both the pre-election and pre-certification periods in 1964 supervisory employees of Stark freely commented that a union victory would cost the employees their bonus. Stark's Board of Directors on November 2, 1964, five days after the certification and before any bargaining session with the Union, voted categorically not to pay the bonus in December, 1964. At the first bargaining session, on November 11, 1964, the Company representative (who, significantly enough, had not even been informed of the action of Stark's Board) advised the Union representative, who inquired whether the 1964 bonus would be paid, that "we will talk about that * * * in the future." At the next bargaining meeting on December 9, the Union representative repeated his inquiry, at which time the Company representative replied with an emphatic "no." It was the Company contention then, as it is before this Court, that if it paid the bonus for 1964 it would suffer a loss for the year. In December, 1964, Stark offered to submit financial data to support this position. The Union countered with the opinion that Stark's action in withholding the bonus was "punitive because the people joined the Union." The Union promptly filed an unfair labor practice charge with the Board. In February, 1965, after the Board had issued a complaint respecting this and other charges to which reference has been made herein, the Company, as part of a single offer covering a new contract, offered to pay 25% of the 1964 bonus. The Union asserted that it was willing to bargain about future bonuses and wages, but that the 1964 bonus was a matter pending before the Board.

Stark concedes here, as it did before the Board, the regularity of the bonus payments in previous years and also that the payment or non-payment of the 1964 bonus was a bargainable issue.

The Board found, with respect to the issues before us—

FIRST, that Stark's motive in deciding to and withholding the 1964 bonus was to discourage Union activity (concluding that Stark, therefore, violated Section 8(a) (3) and (1) of the Act).

SECOND, that Stark unilaterally determined not to pay the bonus without any bargaining on the matter, and failed and refused to bargain in respect of that bonus (concluding that Stark had thereby violated Section 8 (a) (5) and (1).

The Board concluded that the proper remedial order was one directing the Company to pay the 1964 bonus in the customary amount.

Petitioner contests the findings, the conclusions, and the propriety of the remedy.

Petitioner urges that the failure to pay the bonus was caused by the unusual financial situation of the Company and that the refusal to bargain was bilateral.

Petitioner also questions the propriety of the remedy, relying mainly upon NLRB v. Citizens Hotel Co., 326 F.2d 501 (5th Cir. 1964).

The scope of our review in respect of the substantive objections of petitioner is limited. Section 160(e), Title 29 U.S. C. provides in part, "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, whether or not it may seem more plausible and reasonable to us. NLRB v. Challenge-Cook Bro. of Ohio, 374 F.2d 147 (6th Cir. 1967) and cases therein cited.

The question of the motive or motives which actuated the Board of Stark in its unilateral corporate determination is a question of fact and the Board's determination that the motive was "to discourage Union activity" was certainly a fair inference to be drawn therefrom. The Board need only have

found that it was "one" of several motives. In NLRB v. Electric Steam Radiator Corp., 321 F.2d 733 (1963), a case which is remarkably similar to this case in its facts, this Court said:

"In any event, even accepting respondent's contention that these were reasons why the bonus was not paid, it in no way establishes the fact that these were the only reasons. In addition to such reasons, antiunion motivation could also have been a material contributing reason. It is not necessary that antiunion motivation be the only reason for the discriminatory action complained of. It is sufficient if it is a substantial reason, despite the fact that other reasons may also exist."

The fact that Stark paid the bonus in December of 1963 in the face of an operating loss only two months before a representation election, whereas it unilaterally determined a few days after certification not to pay the bonus or any part thereof in a year of net operating profit, certainly justifies the inference of substantial relationship between the Board's (Stark) determination and restraint or coercion or discrimination. We conclude that the findings of the Board on the Section 8(a) (3) and (1) issue are supported by substantial evidence.

■ With respect to the 8(a) (5) issue, again the conclusion, in the context of the issue in this case, is inextricably entwined with a determination of fact or the appropriate inference to be drawn from admitted facts. The problem is one of "good faith" in approach to the bargaining table. Petitioner urges that prior to the first bargaining meeting on November 9, 1964, both Stark and the Union had irretrievably adopted an "all or nothing" attitude with respect to the bonus; that it takes two persons to bargain; that, therefore, the violation of petitioner was only technical. We do not reach the "mutuality" problem in this case by reason of the finality of the unilateral determination of Stark's Board and particularly its timing—only days after certification and only weeks before the passage of the time of accrual of the bonus which Stark itself had described during the election contest "as much a part of earnings as the rest of wages." The fait accompli or preconceived determination, unilateral and final as it was, without notice to or consultation with the certified representative, coupled with the failure to inform Stark's own representative, are manifestly inconsistent with the principles of collective bargaining, (NLRB v. Crompton-Highland Mills, 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320 (1949)) and fully justified the conclusion of the Board that Stark refused to bargain and violated Section 8(a) (5) and (1). All preceded the first bargaining meeting and "reflects a cast of mind against reaching agreement." NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

■ The Company's ex post facto effort to bargain in February, 1965 (referred to above and which took place after the Union's complaint was pending before the Board) made, as it was, as an item in a general overall contract, amounted in essence to a proposal that the Union, as a part of the price of a new contract, withdraw its unfair labor practice charge. So construed—and there was no exception to this conclusion of the Board—NLRB v. Ferraro's Bakery, 353 F.2d 366 (6th Cir. 1965), Stark's offer was plainly violative of Section 8(a) (5) for it is a "refusal to bargain" to insist on the dropping of a charge as a condition to obtaining a contract. American Laundry Machinery Co. v. NLRB, 174 F.2d 124 (6th Cir. 1949); Lion Oil Co. v. NLRB, 245 F.2d 376 (CCA 8, 1957).

■ This leaves remaining the contention of the petitioner with respect to the choice of remedy. The petitioner questions the power of the Board to order the payment of the bonuses and interest and asserts, in any event, that any Board discretion in such matters was abused.

In NLRB v. Electric Steam Radiator, supra, this Court upheld the power of the Board to order an employer to pay in 1959 the same bonuses as that company had paid in 1958. The Board's power to issue such an order has also been upheld by the Fifth Circuit in NLRB v. Exchange Parts, 339 F.2d 829 (5th Cir. 1965), and by the Seventh Circuit in NLRB v. Central Illinois Public Service Co., 324 F.2d 916, (CA 7th, 1963). Section 10(c) of the Act broadly empowers the Board to order "such affirmative action * * * as will tend to effectuate the policies of this Act." The Board has authority "to mould remedies suited to practical needs" and "which are adapted to the situation." NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953) and NLRB v. MacKay Radio and Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L. Ed. 1381 (1938). In respect of matters of remedy as well as substance "[t]he ultimate problem is the balancing of the conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board subject to limited judicial review." National Labor Relations Board v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963), citing National Labor Relations Board v. Truck Drivers Union, etc., 353 U.S. 87, 77 S. Ct. 643, 1 L.Ed.2d 676 (1957). The power of the Board to issue this order has been upheld by ample precedent.

In urging abuse of discretion, petitioner relies mainly on NLRB v. Citizens Hotel Co., supra. In that case the Court, upholding the power of the Board to issue a bonus payment order emphasized that the "actual nature of the failure to bargain bears significantly on the remedy to be imposed by the Board." The facts involved in the *Citizens Hotel* case are substantially different than the facts in this case. In the *Citizens Hotel* case

the employer not only was lacking any earned surplus (this employer's earned surplus was ample) but had operated for some forty years without ever making an annual profit; the bonus involved had been paid out of capital funds raised by borrowing over a period of six of the years. In 1961 a Union was certified and the company determined not to pay a bonus for that year. In 1958 the company had drastically reduced the bonus involved in a year in which the company's losses were modest in comparison with the losses in 1960 and 1961. The Union had not even mentioned the subject of bonus at the first two bargaining meetings. The action of the company in respect of the bonus was the only indication of any anti-union motivation and the Court pointed out:

"No contention is, or can be, made that there is any direct evidence of antiunion motivation such as threats, coercive statements, or declarations made indicating that this action was a reprisal for the September election victory of the Union."

The Fifth Circuit recognized—

"of course, that there are circumstances in which, to effectuate the dominant policy of collective bargaining in good faith, a restitution order is permissible or required. But we do not think that in the situation revealed by this record of a Section 8(a) (5) violation based solely on an impermissible unilateral change justifies the order here made."

We have pointed out at the outset that the unilateral action of Stark in respect of the 1964 bonus occurred in a context of unfair labor practices following an actively contested election in which Stark plainly manifested its opposition to the Union. The Board did not abuse its discretion. The petition of Stark Ceramics, Inc. is denied and the National Labor Relations Board petition to enforce should be granted.