**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Marvin A. WITBECK, d/b/a Witbeck's IGA Supermarket, Respondent.**

**No. 17218.**

United States Court of Appeals
Sixth Circuit.

Aug. 29, 1967.

---

Marcus Sisk, Atty., National Labor Relations Board, Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., National Labor Relations Board, Washington, D. C., on the brief.

Jay F. Trucks, Clare, Mich., for respondent, Hughes & Trucks, Clare, Mich., on the brief.

Before O'SULLIVAN, PECK and Mc-CREE, Circuit Judges.

PER CURIAM.

In this action, the petitioner (hereinafter referred to as the "Board") seeks enforcement of its order finding respondent guilty of unfair labor practices, enjoining against a continuation of such practices and requiring the performance of specified acts. Respondent (hereinafter usually referred to as "Witbeck") asks that the Board's petition be dismissed in its entirety.

Witbeck operates a supermarket in Clare, Michigan, and during the fall of 1964 Retail Store Employees Union, Local No. 11, Retail Clerks International Association, AFL-CIO, (hereinafter the "Union") conducted an organizational campaign among its employees. Witbeck asked one such employee if a Union representative had been to see him and asked whether he had signed a card, commenting that he "would just as soon" the employee did not so sign "because it would only cause a lot of trouble." He repeated the question some two weeks later, urged him not to sign, and instructed against discussion of the Union in the store, where they were then talking.

At about the same time, Witbeck talked to another employee in the store about "some union guys talking with employees," and stated that he would "ap-

preciate it very much" if the employees did not sign.

Also in the same time area Witbeck asked another employee if she was "for or against the Union," and when she declined to respond, he asked if she had any complaints. Told that her main complaint concerned wages, Witbeck said she should have gone to him instead of seeking outside "help." Generally similar approaches to these were made by Witbeck to as least three other employees. On the basis of these conversations and statements of respondent, the Board found him to have violated Section 8(a)(1) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.), hereinafter referred to as the "Act."

An employee named Hills had been employed less than two months earlier to operate doughnut and barbecue machines and to bake pies. Two days after she signed a union authorization card on September 17, 1964, Witbeck gave her her pay envelope, told her he was letting her go, explaining that "if the Union got in he wouldn't be able to keep the doughnut machine open." Following a discussion between Witbeck and a Union representative she was called back on a half-time basis, on which she remained until November 14, at which time she was dismissed with the statement that she would be called back in the spring if he reopened the doughnut stand. The Section 8(a)(3) and (1) of the Act violations cite her dismissal.

On September 22, 1964, nine of the fourteen employees in an admittedly appropriate bargaining unit having signed union authorization cards, two union representatives met with Witbeck. They made the cards available, but Witbeck refused the demand for recognition and offer to have the cards checked, without claiming that he had doubt of the Union's majority status. A similar occurrence took place approximately one week later when in addition to the Union representatives and Witbeck, his labor relations consultant was present. This course of conduct on respondent's part forms the basis of the Board's charge under Section 8 (a)(5) and (1) of the Act.

It is, of course, basic that the only issue presented in such circumstances is whether substantial evidence exists on the record as a whole to support the Board's findings of interference, restraint and coercion (with reference to the Section 8(a)(1) alleged violation),[1] of the layoff, placing on half time and ultimate discharge (with reference to the Section 8(a)(3) and (1) alleged violation),[2] and of the refusal to bargain (with reference to the Section 8(a)(5) and (1) alleged violation).[3] National Labor Relations Board v. Bendix Corp., 299 F.2d 308 (6th Cir. 1963); National Labor Relations Board v. Interurban Gas Corp., 317 F.2d 724 (6th Cir. 1963); Houchens Market of Elizabethtown, Inc. v. N. L. R. B., 375 F.2d 208 (6th Cir. decided March 24, 1967). While the evidence of violation as to all of the alleged violations is at best far from overwhelming,[4] and particularly with reference to the Section 8(a)(3) and (1) violation leaves much to be desired, we cannot say under the facts and authorities that substantial evidence to support the Board's determinations are not present in the record.

It follows that enforcement of the order of the Board should be and is ordered.

1. See National Labor Relations Board v. Flemingsburg Mfg. Co., 300 F.2d 182, 184 (6th Cir. 1962); National Labor Relations Board v. Monarch Tool Co., 210 F.2d 183, 187 (6th Cir. 1954).

2. Metal Blast, Inc. v. National Labor Relations Board, 324 F.2d 602, 603–604 (6th Cir. 1963); National Labor Relations Board v. Putnam Tool Co., 290 F.2d 663, 665 (6th Cir. 1961).

3. National Labor Relations Board v. Cumberland Shoe Corp., 351 F.2d 917, 920 (1965); National Labor Relations Board v. Winn Dixie Stores, Inc., 341 F.2d 750, 754 (6th Cir. 1965).

4. We have no hesitancy in saying that were we the fact finders we would have difficulty finding support for the charges of unfair labor practices.