**William S. PETERSON and Betty M. Peterson, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 20515.**

United States Court of Appeals
Ninth Circuit.

June 5, 1967.

Milton O. Wordal, Dale Forbes, Melvyn M. Ryan, Church, Harris, Johnson & Williams, Great Falls, Mont., for appellants.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Harold C. Wildenfeld, Edward Heilbronner, C. Moxley Featherston, Attys., Tax Div., Dept. of Justice, Washington, D. C., Mitchell Rogovin, Chief Counsel, I.R.S., Washington, D. C., for appellee.

Before CHAMBERS, HAMLIN and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge:

William Peterson is a successful promoter of cemeteries. Like most of us, he doesn't want to pay any higher income taxes than necessary.

At Kalispell, Montana, in 1955, he acquired initially ten acres of land for $2500. Then he and Mrs. Peterson set up a commercial corporation called Glacier Memorial Gardens of Kalispell, Inc. The two Petersons received the only stock is-

1

sued by the company for a total purchase price of $60.

A month after the acquisition of the land, it was deeded to the new corporation. Simultaneously, there was executed a "land purchase and financing agreement" between Peterson individually and his company, Glacier Gardens. This contract provided:

1. Glacier was to pay periodically to Peterson 20 per cent of the gross sales price of each burial lot sold from the originally transferred land and any subsequent additions thereto.

2. Glacier was to pay Peterson 10 per cent of the gross sales price of family memorials and markers sold at the cemetery.

3. The obligations to pay (1) and (2) above were to be represented by 100 equal "Registered Certificates of Indebtedness." In due course, the certificates were issued.

■ The objective was to comply with Section 1232 of the Internal Revenue Code of 1954 and get capital gains treatment on all payments made on the certificates thereunder. The commissioner and the tax court held the payments on the certificates to be ordinary income and not capital gains for the income tax years of 1956, 1957, 1958 and 1959.[1] The conclusion was that the transfer of the ten acres represented only an equity contribution to the new company. We affirm the tax court decision as not clearly erroneous.

It may be said that the tax court decision relies on thin capitalization and the indefiniteness of the certificates. (Of course, as to measurement of amount, on any payment the certificates were definite.)

■ In essence, we think the tax court was right because the certificates were just too "iffy" and we do not reach the thin capitalization issue. The certificates hardly would qualify as fungible. They were the sort of tailor-made thing that an ordinary man dealing with himself might use. In many ways they bore a closer resemblance to preferred stock than to ordinary debt. Thus Peterson had a right to payment only if the corporation made sales, there was no provision for payment of interest, the amount of the debt was not fixed, and there was no set date for maturity.[2]

There seems to have been no business reason for the arrangement other than tax avoidance. That the corporation had no independent vitality and was merely an artificial conduit by which taxes could magically be reduced can be seen from the fact that the corporation paid such a very, very high price (20 per cent of the gross sales price of burial plots plus 10 per cent of the gross sales price of markers) for the $2,500 advance. If the corporation did well the lender stood, not to get his money back with interest as would normally be the case, but to indefinitely skim off most of the cream. The profits, as above indicated, were not limited to the original plot of land, but applied to further development with oth-

---

1. That the tax court may disregard the form of a transaction in favor of .the substance is established. Gooding Amusement Co. v. Commissioner, 6 Cir., 236 F.2d 159, cert. denied 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599; Burr Oaks Corporation v. C. I. R., 7 Cir., 365 F. 2d 24 (1966).

2. Schemes by which cemetery operators buy a plot of land and then trade it to a closely held corporation for certificates of indebtedness have been before the courts a number of times in recent years. All the schemes have been substantially identical to the Petersons'. The basic idea is to get the human bodies in the ground and the money out, at capital gains rates, as fast as possible. Courts have had little difficulty labeling these transactions as disguised equity investments and in applying dividend treatment. Gardens of Faith, Inc. v. Commissioner, 4 Cir., 345 F.2d 180, affirming per curiam 64, 178 P-H Memo TC; cert. denied 382 U.S. 927, 86 S.Ct. 314, 15 L.Ed.2d 340; Sherwood Memorial Gardens, Inc. v. Commissioner, 7 Cir., 350 F.2d 225; Knollwood Memorial Gardens v. Commissioner, 46 T.C. 764.

er plots forever. Even if the corporation had done poorly petitioner and his wife, as sole stockholders, could have folded it up and taken the land back.

Affirmed.