**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KAYSER–ROTH HOSIERY CO., Inc., Respondent.**

**No. 11307.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 8, 1967.

Decided Jan. 12, 1968.

Thomas R. Beech, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N.L.R.B. on brief), for petitioner.

J. W. Alexander, Jr., Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The National Labor Relations Board asks that its order of April 18, 1966, 158 NLRB No. 10, be enforced; respondent, which manufactures and distributes hosiery, opposes the order and urges us to set it aside.

■ The Board concluded that the company, Kayser-Roth Hosiery Co., Inc., violated Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. in its attempts to prevent the unionization of its Burlington, North Carolina plant by the Hosiery Workers Union. Briefly, the Board found that the company had (1), unlawfully interrogated an employee about union activities, (2), created an impression of surveillance of such activities and (3) threatened employees with reprisals if they adopted the union as their representative. Except for one instance, these findings, we conclude, were not unsupported by substantial evidence in the record when viewed as a whole.

■ One of the Board's findings we cannot accept. In the midst of the organizing campaign, the company posted a notice which contained, inter alia, the following language:

"(1) This matter [the union campaign] is, of course, one of concern to the Company. It is also, however, a matter of serious concern to you and our sincere belief is that if the Union were to get in here it would not work to your benefit but, in the long run would itself operate to your serious harm."

Relying on recent decisions of the Board, e. g., Sagamore Shirt Company, 153 NLRB No. 27, the Trial Examiner held that this language, standing alone, was coercive and therefore violative of Section 8(a) (1). The Board agreed with this result, but it based its conclusion on a view of the notice when combined with the other unfair labor practices committed by the company. The Board's order reflected this conclusion, for it required the company to cease and desist from:

"(f) Posting at its plant or distributing to its employees notices informing them in effect that if the Union's organizational efforts succeed it would not work to their benefit but would in the long run operate to their serious harm."

This conclusion and the quoted part of the order run counter to a series of decisions by this Court. See e. g., Wellington Mill Division, etc. v. NLRB, 330 F.2d 579 (4 Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964); NLRB v. Threads, Inc., 308 F.2d 1, 8 (4 Cir. 1962). In its brief, the Board urged us to reconsider these opinions in the light of a recent Board decision, Greensboro Hosiery Mills, Inc., 162 NLRB No. 108. We have reviewed this decision, but conclude that our case does not present an occasion for reconsidering our earlier opinions. And even if we desired to modify these earlier decisions, we would not be justified in doing so on the facts of this

case. Thus we hold that substantial evidence does not support the conclusion that the language quoted above, and the other circumstances, amount to a violation of Section 8(a)(1) of the Act. Accordingly, that portion of the Board's Order which prohibits the company from posting such a notice must be set aside. With respect to the remaining portion of the Order, the Board's petition is granted.

Order enforced in part and set aside in part.

SOBELOFF, Circuit Judge (concurring specially):

While I agree with the disposition of this case on its facts, I do not share the court's reluctance to reconsider and disavow a doctrine established by this circuit in a short series of cases, for at least one of which I confess partial responsibility.

In NLRB v. Threads, Inc., 308 F.2d 1, 9 (4th Cir. 1962), in which I concurred, we made the logic-defying statement that prior (or presumably simultaneous) unlawful labor practices can "not transform protected free speech into unlawful and unprotected speech."

This is too broad a statement to be supported. The nation's constitutional tenets protecting freedom of speech do not reject the familiar premise that something said in one context may be entirely permissible while in a different situation the same statement may be forbidden and even render the speaker subject to punishment. Thus, in Justice Holmes's classic example, a false cry of fire, conceivably tolerable in some places, will not be protected if shouted in a crowded theater. See Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L. Ed. 470 (1919). See also, Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), where the context of speech determined its legality.

The freedom of speech specifically protected by section 8(c) of the Labor Act must be hedged by similar restrictions. It is one thing for an employer to state that a union may operate to the employees' "serious harm" where he conscientiously abstains from committing unfair labor practices; it is quite another for him to make the same statement in the midst of flagrant violations, including threats to discharge and actual discharges of union adherents because of the employer's anti-union animus. Both the Second and the District of Columbia Circuits have recently taken the view that an employer's notice pointing out that a union might prove harmful "may take a different coloration by virtue of the accompanying circumstances" and that an otherwise innocuous remark may "take on a darker hue when viewed in the perspective of the particular setting." J. P. Stevens & Co. v. NLRB, 380 F.2d 292, 302, 303 (2d Cir. 1967); Amalgamated Clothing Workers, etc. v. NLRB, 124 U.S.App.D.C. 365, 365 F.2d 898, 910 (1966).

Because the attendant violations in this case are too isolated and remote from the posting of the notice, I would agree that they may not be relied upon here to convey a sinister connotation to the otherwise valid notice. But we should not hesitate to join our sister circuits in establishing a "circumstance" test under which any employer statement must bear examination in light of the totality of his conduct in order to discern whether the statement constituted a direct or implied "threat of reprisal or force or promise of benefit." In so doing we shall merely be reaffirming this court's recent pronouncement per Judge Boreman in NLRB v. McCormick Concrete Co., 371 F.2d 149, 152 (4th Cir. 1967): "The fact that these statements considered alone and out of the context in which they were made may not amount to threats of economic reprisal is of no moment because their effect must be considered in toto."