**KAYSER–ROTH HOSIERY COMPANY, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Textile Workers Union of America, AFL–CIO, Intervenor.

**TEXTILE WORKERS UNION OF AMERICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Kayser-Roth Hosiery Company, Inc., Intervenor.

Nos. 19665, 19890.

United States Court of Appeals, Sixth Circuit.

Aug. 17, 1970.

J. W. Alexander, Jr., Charlotte, N. C. (Philip J. Kennedy, Sr., Cincinnati, Ohio, on the brief), for Kayser-Roth Hosiery

**702**

Co.; Kennedy & Moore, Cincinnati, Ohio, Blakeney, Alexander & Machen, Charlotte, N. C., of counsel.

Vivian Asplund, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., National Labor Relations Board, Washington, D. C., on the brief), for National Labor Relations Board.

Patricia E. Eames, New York City (Cornelius J. Collins, Jr., New York City, on the brief), for Textile Workers Union.

Before PECK and BROOKS, Circuit Judges, O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

One of these two appeals, No. 19,665 involves the petition of Kayser-Roth Hosiery Company, Inc. to review an order of the National Labor Relations Board which found that the Company violated Section 8(a) (5) and (1) of the Act by failing to bargain in good faith with the Union during contract negotiations. The Board filed a cross-application for enforcement and the Textile Workers Union of America, AFL–CIO intervened. Appeal No. 19,890 was transferred from the United States Court of Appeals for the District of Columbia Circuit where the Union had petitioned for review of the Board's order to the extent that it failed to grant certain relief sought by the Union. In that case, the Company intervened. The Board's Decision and Order is reported at 176 N.L.R.B. No. 139. The two cases have been consolidated by this Court, which has jurisdiction pursuant to Section 10 (e) and (f) of the Act, the alleged unfair labor practices having occurred at Dayton, Tennessee.

The facts out of which the dispute arose are not unique. The company vigorously opposed the organization of its plant at Dayton, Tennessee.[1] A representation election held at the plant in 1964 was inconclusive because the votes of a number of employees discharged by the Company were challenged. When the challenges were resolved by the Board, a majority of the employees having voted for Union representation, the Union was finally certified on September 11, 1967.

Bargaining sessions began immediately and continued for eight months when, on May 6th, having been unable to reach an agreement, the employees went out on strike. The strike lasted for a period of seven months. During the strike period bargaining continued, and finally a contract was signed on December 2, 1968, and the strike ended. The negotiation of the contract had consumed almost fifteen months, and during that period the parties had met on some nineteen occasions. A federal conciliator participated in the meeting during the final nine months of these protracted negotiations.

It would not be helpful to recount the details of the bargaining sessions. The Board found from the entire record, as did the trial examiner, that the Company failed to bargain in good faith with the Union and so violated Section 8(a) (5) and (1) of the Act, and also that the strike was an unfair labor practice strike from its inception.

In making these findings reliance was placed upon National Labor Relations Board v. Reed & Prince Manufacturing Company, 205 F.2d 131, 134–135 (1st Cir. 1953), cert. denied 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953). This case sets forth approved guidelines as follows:

" * * * [I]t seems clear that if the Board is not to be blinded by empty talk and by the mere surface motions

1. The Company has a history of opposing collective bargaining: National Labor Relations Board v. Greensboro Hosiery Mills, Inc., 398 F.2d 414 (4th Cir. 1968) ; National Labor Relations Board v. Kayser-Roth Hosiery Co., Inc., 388 F.2d 979 (4th Cir. 1968) ; Greensboro Hosiery Mills, Inc. v. Johnston, 377 F.2d 28 (4th Cir. 1967).

of collective bargaining, it must take some cognizance of the reasonableness of the positions taken by an employer in the course of bargaining negotiations. \* \* \* [W]hile the Board cannot force an employer to make a 'concession' on any specific issue or to adopt any particular position, the employer is obliged to make *some* reasonable effort in *some* direction to compose his differences with the union, if § 8(a) (5) is to be read as imposing any substantial obligation at all."

See A. H. Belo Corporation (WFAA–TV) v. National Labor Relations Board, 411 F.2d 959, 969 (5th Cir. 1969), cert. denied, 396 U.S. 1007, 90 S.Ct. 561, 24 L.Ed.2d 498 (1970) ; Tex Tan Welhausen Company v. National Labor Relations Board, 419 F.2d 1265, 1269 (5th Cir. 1969), U.S.App.Pndg.; National Labor Relations Board v. Yutana Barge Lines, Inc., 315 F.2d 524, 528 (9th Cir. 1963) ; National Labor Relations Board v. I. B. S. Manufacturing Company, et al, 210 F.2d 634, 638 (5th Cir. 1954).

 Whether bargaining negotiations are carried on in good faith requires a factual determination of the intent of the parties. National Labor Relations Board v. Reed & Prince Manufacturing Company, supra. Also,

"The previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations constitute the raw facts for reaching such a determination. The appropriate inferences to be drawn from what is often confused and tangled testimony about all this makes a finding of absence of good faith one for the judgment of the Labor Board, unless the record as a whole leaves such judgment without reasonable foundation. See Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456."

National Labor Relations Board v. Truitt Manufacturing Company, 351 U.S. 149, 155, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). (Frankfurter, J., separate opinion).

Our study of the record establishes that there is substantial evidence supporting the findings of the Board.

 In this combined review, the Union contends that an official of the Company made coercive statements to some employees but this issue was decided adversely to the Union by the trial examiner and there is substantial evidence in the record supporting this finding. The same is true of a similar charge made against other employees of the Company because the coercive statements were not made by official management personnel. The Union also urges that the Board should order a checkoff of union dues but the case on which the Union relies has been reversed and the Board has no power to compel a company to acquiesce to such a demand. H. R. Porter v. National Labor Relations Board, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). Finally, the Union claims its members are entitled to lost wages during the strike. Traditionally, to enable an employee to receive wages for the time lost during an unfair labor practice strike, it is encumbent that a request for reinstatement be made. See United Steelworkers of America, AFL–CIO, Local 5571 v. National Labor Relations Board, 130 U.S.App.D.C. 369, 401 F.2d 434, 438 (1968), cert. denied, Stanley-Artex Windows, Division of Stanley Works v. National Labor Relations Board, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 465 (1969) ; Sea-Way Distributing, Inc., 143 N.L.R.B. 460 (1963). No such requests were made in this case.

The petitions for review are denied and the order will be enforced.