**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AEROVOX CORPORATION OF MYRTLE BEACH, SOUTH CAROLINA, Respondent.**

No. 13992.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1970.

Decided Dec. 22, 1970.

James P. Hendricks, Atty., N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Nancy M. Sherman and Lawrence I. Kipperman, Attys., National Labor Relations Board, on the brief), for petitioner.

Ellison D. Smith, IV, Columbia, S. C., (Smith & Smith, Columbia, S. C., on the brief), for respondent.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from a Decision and Order of the National Labor Relations Board finding Aerovox Corporation guilty of unfair labor practices in violation of Sections 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., and directing reinstatement of employment and the posting of the usual notices. Involved are circumstances surrounding two union elections on February 24, and July 27, 1967, for different employee units within appellant's company. The Union was successful in both elections and was subsequently cer-tified as bargaining representative. During the course of the troubled campaign nine union-connected employees were fired or suspended, and there was evidence of verbal threats. The company posted a "serious harm" notice and directed a personal letter to each employee which the Board considered coercive. It is only these elements of a complex fact situation that need concern us for the company commendably has consented to enforcement of much of the Board's Order.

I.

■ *Firing and suspension of company employees because of union activity in violation of Sections 8(a) (1) and (3) of the Act.* Aerovox contests the Board's finding that certain employees laid off ostensibly for legitimate causes were in fact fired or suspended because of their union activity. Our scope of review is narrow. Unless we find that there is no substantial evidence in support of the Board's position "when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view" we may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). See also NLRB v. Walton Manufacturing Co., 369 U.S. 404, 405, 82 S. Ct. 853, 7 L.Ed.2d 829 (1962); NLRB v. Pittsburgh Steamship Co., 337 U.S. 656, 659, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949). Since the company has consented to enforcement of the Order as to five of the concerned employees we need only consider the four charges contested on appeal.

■ E. B. Martain, an employee of some seven years at Aerovox, was discharged for "soliciting for the union on company time * * * and interfering with production" because he had talked to a production employee at a time before organization among the pro-

duction workers had commenced. During the brief encounter the other employee had not ceased her work. Munick Carl Hucks, an employee for some four years, was discharged for failure to report for work on December 31, 1966, while other employees absent on that day were given only oral or written reprimands. The trial examiner found that the reasons stated by the company for these drastic remedies were merely pretextual since no reasonable investigation was made into Martain's alleged violation and other employees were treated less harshly than employee Hucks. We are unable to say these findings were not supported by substantial evidence.

■ Mary Mishoe and Arlene Hucks were suspended for wearing union badges on May 22, 1967. The company admits the motivating factor behind these suspensions was their union activity, but insists that Mishoe and Hucks were not "employees" under the Act, but were "supervisors" as defined by Section 2(11) and therefore not protected. The Board found that the two were not supervisors because of the nature of their work and their lack of managerial powers. The trial examiner credited testimony that they were never told that they were supervisors or invited to attend any supervisors' meetings until the day of their suspension and upon substantial evidence made the ultimate finding that these employees lacked "scope for independent judgment or discretion" (Trial Examiner Opinion and Order) concerning the operations in their section.

> The important thing is the possession and exercise of actual supervisory duties and authority and not the formal title. It is a question of fact in every case as to whether the individual is merely a superior workman or lead man * * * or is a supervisor who shares the power of management. NLRB v. Southern Bleachery & Print Works, 257 F.2d 235, 239 (4th Cir. 1958).

We agree with the Board's findings that, upon the whole record, employees Mishoe and Hucks were "employees" under the Act and that they were suspended in violation of Section 8(a) (1) and (3).

## II.

■ *Coercive activity by interrogations and threats in violation of Section 8(a) (1) of the Act.* Appellant contests the findings of the Board in two of four instances with respect to charged verbal threats made to employees. In one instance a plant engineer allegedly told employee James Todd that if the union won the election on February 24, employees' "files would be thrown in the trash can" and that the employees "would have to stand a test." In another instance, a foreman allegedly warned employee Velma Messer, who had been promised a union authorization card by another employee, not to "let any of those girls talk you into doing anything * * * [because] it will cause you to lose your job." Aerovox admits that the findings of the Board in these instances involved determinations of credibility, tasks for which the Examiner and Board are well suited, and for which this court is not. NLRB v. School-Timer Frocks, Inc., 224 F.2d 336, 337 (4th Cir. 1955). Thus Aerovox's contention that the findings of the Board are not supported by substantial evidence is without merit. It is clear in the factual context that the words were coercive and in violation of Section 8(a) (1).

In question also are two charges of coercive literature distributed by the company. On December 5, Aerovox posted a "serious harm" notice, the pertinent part of which we set out here:

> This matter is, of course, one of concern to the company. It is also, however, a matter of serious concern to you and our sincere belief is that if this Union were to get in here, it would not work to your benefit but, in the long run, would operate to your serious harm.

■ In prior decisions we have held that the typical "serious harm" notice

was protected by the First Amendment and the "free speech" provisions of Section 8(c); Wellington Mill Div., West Point Mfg. Co. v. NLRB, 330 F.2d 579, 583 (4th Cir. 1964); NLRB v. Threads, Inc., 308 F.2d 1, 9 (4th Cir. 1962); J. P. Stevens & Co. v. NLRB, 406 F.2d 1017, 1021 (4th Cir. 1968). In these decisions we have concluded that a "serious harm" statement does not, alone, amount to a "threat of reprisal or force or promise to benefit." We adhere to that proposition.

We also agree, however, that all statements and notices must be viewed in the setting in which they are made. NLRB v. Gissell Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 656 (1969); NLRB v. Greensboro Hosiery Mills, Inc., 398 F.2d 414, 417 (4th Cir. 1968). We did not say otherwise in J. P. Stevens & Co. v. NLRB, 406 F.2d 1017 (4th Cir. 1968), which the Board reads to imply that such a notice is absolutely privileged without regard to the context of its labor relations setting.[1] Perhaps the closest we have come to a rejection of the "circumstances" test of speeches and notices was in NLRB v. Threads, Inc., 308 F.2d 1 (4th Cir. 1962); see the opinion of Judge Sobeloff concurring in NLRB v. Kayser-Roth Hosiery Co., 388 F.2d 979, 981 (4th Cir. 1968). But if the *Threads* decision stands for such a proposition, it was clearly rejected in NLRB v. Greensboro Hosiery Mills, Inc., *supra*. Cf. NLRB v. McCormick Concrete Co., 371 F.2d 149, 152 (4th Cir. 1967). Moreover, none of these cases was decided in light of *Gissell, supra,* which teaches that the right of the employer to speak freely must be balanced against the right of employees to associate freely. "[A]ny balancing of those rights must take into account the eco-nomic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." NLRB v. Gissell Packing Co., 395 U.S. 575, 617, 89 S.Ct. 1918, 1942, 23 L.E.2d 656 (1969).

■ When viewed in "the context of its labor relations setting", NLRB v. Gissell, 395 U.S. at 617, 89 S.Ct. at 1942, we cannot agree that the company's "serious harm" statement amounted to a threat of reprisal in violation of Section 8(a) (1). This notice was posted just a few days after the union filed its petition to represent the maintenance employees and some two months before the coercive letter of February 3 discussed below. In the interim the climate changed and was reflected in the tone of the letter, parts of which are set out below.

> Remember, the Union cannot guarantee that present benefits will continue under a Union contract. Bargaining starts from scratch! You might think that a change will result in improvement, but a Union often brings *many more problems than it solves.* * * * The only weapon a Union has to attempt to force concessions from an unwilling employer is the strike. With a Union, you must be willing to accept the serious possibility of a strike with all its hazards. * * * Hard feelings, broken friendships and even violence are * * * dangers associated with unionization.

■ Remembering the "tendency (of employees) * * * to pick up intended implications of the (employer) that

1. Presently, only the 6th Circuit supports such notices as privileged under Section 8(c). *See* Surprenant Mfg. Co. v. NLRB, 341 F.2d 756, 759–760 (6th Cir. 1965). Three other circuits have adopted the "circumstances test." *See* Amalgamated Clothing Workers v. NLRB, 420 F.2d 1296, 1299–1300 (D.C.Cir. 1969); Serv-Air, Inc. v. NLRB, 395 F.2d 557, 561 (10th Cir. 1968); J. P. Stevens & Co. v. NLRB, 380 F.2d 292, 302–303 (2nd Cir. 1967). The 5th Circuit declined to decide the issue when the employer "wisely we think, eliminated this critical language. * * *" [*e. g.* "serious harm"] from his notices. NLRB v. Southwire Co., 352 F.2d 346, 348 (5th Cir. 1965).

might be more readily dismissed by a more disinterested ear," NLRB v. Gissell, 395 U.S. at 617, 89 S.Ct. at 1942, we agree with the Board that the letter was coercive and thus without the protection of Section 8(c). Taking into account the economic dependence of employees on their employers we think the Board might reasonably infer a threat to arbitrarily discontinue present benefits including present wage scales. That is not an unreasonable interpretation of the rather cryptic phrase "bargaining starts from scratch!" Nor is it unreasonable for the Board to infer from the language a suggestion that Aerovox would surely become an "unwilling employer" thus raising the spector of a strike.

We think it perhaps significant that the Board in its Decision and Order devoted a separate full paragraph to a discussion of the coercive letter of February 3, 1967, and made no mention whatsoever of the "serious harm" notice of December 5, 1966. Since the letter was unquestionably coercive and is by itself sufficient to support the Board's Order,[2] the Board's present insistence that we reconsider the possible implication of J. P. Stevens & Co. v. NLRB, 406 F.2d 1017 (4th Cir. 1968), appears to be rather academic. There is no occasion for us to reconsider our prior decision in *Stevens* because the result here will be the same whether that decision should be reaffirmed, rejected, or distinguished.

Although we believe the "serious harm" notice in the context of this case is protected by the First Amendment and Section 8(c) of the Act, for the reasons hereinbefore stated, the Order of the Board will nevertheless be Enforced.

BOREMAN, Circuit Judge (concurring specially):

While concurring in the decision to enforce the Board's order I feel that one confusing aspect of this case, *i.e.*, al-

leged unlawful suspension of Mary Mishoe and Arlene Hucks, may warrant some elaboration and additional comment. This is because I was at first convinced that the suspensions were justified and not in violation of the Act.

The company contends that Mishoe and Hucks were assistant supervisors, and as such were part of management, subject to disciplinary action for engaging in pro-union activities. These two employees were wearing union badges, were suspended and have not since been rehired. The company further contends that Mishoe and Hucks should have been considered supervisory personnel because assistant supervisors had been determined to be "supervisors" within the meaning of the Act at a prior representation hearing. It is unquestioned that, at the representation hearing, there was a stipulation between the company and the union that all foremen, assistant foremen, supervisors and assistant supervisors were "supervisors" within the meaning of the Act and there were stipulations also that certain named assistant supervisors were within the supervisory structure. However, it is not easily determinable just what effect such stipulations had upon the status of Mishoe and Hucks due to the confusing inconsistency with which the parties treated the status of "material handlers" or "assistant supervisors."

Such confusion is evidenced in the Board's treatment of the status or classification of such persons. Since all parties seemingly agreed that there is no substantial difference between "material handlers" and "assistant supervisors", it would appear that the stipulation that assistant supervisors were to be treated as supervisors would indicate that material handlers should also be treated as assistant supervisors. Yet, the Board insists that the status of all material handlers was not determined at the representation hearing.

2. The portion of the Order referred to reads as follows: "We will not threaten loss of jobs or other adverse economic consequences because the employees join a union or select it as their collective bargaining representative."

Even more surprising is the discovery that the company obviously did not think that the status of some "material handlers" or "assistant supervisors" had been determined at the representation hearing since it included at least five assistant supervisors, *among them Mishoe and Hucks*, on its list of employees eligible to vote in the election,[1] while now contending that such persons were part of management. Furthermore, the company failed to challenge one vote at the election which the Board challenged on the basis that the voter was an assistant supervisor; this would additionally indicate that the company was not then as certain as it now claims to be that all assistant supervisors had been determined at the representation hearing to be part of management and therefore ineligible to vote.

In support of its contention that the status of all material handlers or assistant supervisors had not been determined at the representation hearing the Board notes that following the election its Regional Director determined that a hearing would be necessary in order to ascertain the validity of four challenged votes on the ground that these voters were assistant supervisors. This hearing was never held since it appeared that these votes would not determine the outcome of the election. This further supports the Board's contention that the status of certain assistant supervisors (including Mishoe and Hucks) had not been determined at the representation hearing.

In light of the confusing inconsistency with which the parties treated the status of "material handlers" or "assistant

supervisors", I am persuaded to reject the company's claim that there was a clear determination at the representation hearing that *all* assistant supervisors or material handlers were to be considered a part of management. The company's inclusion of the names of Mishoe and Hucks and at least three other "assistant supervisors" on the voting eligibility list strengthens the Board's position that the status of such employees had not been resolved at the representation hearing; the company's excuse that the confusion resulted from a malfunctioning IBM run is unpersuasive since the company certainly could and should have checked the accuracy of the voting eligibility list prior to its submission.

Being unable to say that the status of all assistant supervisors or material handlers had been clearly determined at the representation hearing, it is necessary to look to the testimony introduced in the unfair labor practice hearing to determine whether Mishoe and Hucks were employees entitled to vote or supervisors subject to disciplinary action. The Board found that they were not supervisors due to the nature of their work and their lack of managerial powers. The trial examiner credited testimony to the effect that they were not told that they were supervisors nor were they invited to attend any supervisors' meetings until the day of their suspension; he found that these two employees lacked "scope for independent judgment or discretion." Recognizing that the nature of work performed rather than formal title is determinative as to whether a job is supervisory, I reach the conclu-

---

1. I do not have available for examination the voting eligibility list which the company prepared, but I accept the hearing examiner's finding that the company did include names of some assistant supervisors, among them Mishoe and Hucks, especially since the company does not deny that such names were included on the list but instead tries to explain such inclusion by stating that this was the result of a malfunctioning IBM run.

The list of challenged votes, a copy of which is included in the appendix before us, does include the names of four assistant supervisors, including Mishoe, whose votes were challenged on the basis that they were assistant supervisors. Arlene Hucks was apparently included on the voting eligibility list, but was unable to be present on the day of the election so she did not cast a ballot.

sion that there is substantial evidence in the record to support the Board's determination that Mishoe and Hucks were nonsupervisory employees and that they were suspended in violation of §§ 8(a)(1) and (3).