**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOLLY FARMS POULTRY INDUS-TRIES, INC., Respondent.**

**No. 72-1375.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1972.

Decided Dec. 29, 1972.

R. Bruce McLean, Atty., National Labor Relations Board (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Joseph E. Mayer, Atty., National Labor Relations Board, on brief), for petitioner.

Jesse S. Hogg, Miami, Fla. (Hogg & Allen, P.A., Miami, Fla., on brief), for respondent.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

The National Labor Relations Board seeks enforcement of an order finding that Holly Farms Poultry Industries engaged in unfair labor practices in violation of § 8(a)(1) and (3) [29 U.S.C. § 158(a)(1) and (3)] of the National Labor Relations Act.[1] The charges arose out of the union's[2] campaign to organize Holly Farms' Monroe, North Carolina plant. The Board, one member dissenting, ruled that a letter from Holly Farms to its employees containing a "serious harm" statement violated § 8(a)(1). It unanimously held that two discharges were discriminatory and violated § 8(a)(3). We enforce that part of the order dealing with the § 8(a)(3) violation, but deny enforcement as to the § 8(a)(1) charge.

The § 8(a)(3) complaint of discriminatory discharges presents little difficulty. The factual circumstances are fully set forth in the examiner's decision, which was adopted by the Board, and need not be repeated here. The testimony concerning the discharges was often in direct conflict, and resolution of the factual issues depended on evaluating the credibility of the witnesses. Determining credibility is essentially a

---

1. Holly Farms Poultry, 194 N.L.R.B., No. 165, 79 L.R.R.M. 1127 (1972).

2. Local 525, Meat & Allied Workers Union, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO.

function of the trial examiner and the Board. Dubin-Haskell Lining Corp. v. NLRB, 386 F.2d 306, 308 (4th Cir. 1967). Their credibility findings must be accepted when, as here, they are supported by substantial evidence on the whole record. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Community Motor Bus Co., 335 F.2d 120, 122 (4th Cir. 1964). Accordingly, we grant enforcement of that part of the order pertaining to the § 8(a)(3) charge.

■ As part of its effort to oppose unionization of the plant, Holly Farms sent its employees a long, anti-union letter containing the following statement:

> "This matter is one of concern to your company, you, and your family. It is your company's sincere belief that if this union were to get in here, it would not be to your benefit, but to your serious harm."

While such a "serious harm" statement is not per se an unfair labor practice, neither is it absolutely privileged. NLRB v. Aerovox Corp., 435 F.2d 1208, 1210 (4th Cir. 1970). Section 8(c) of the Act [29 U.S.C. § 158(c)] implements the first amendment by assuring an employer the right to express his views "if such expression contains no threat of reprisal or force or promise of benefit." The company's letter on its face contains nothing unprotected by § 8(c). The issue, therefore, is whether the statement, when viewed in the setting in which it was made, contains an implicit threat of reprisal. NLRB v. Gissel Packing Co., 395 U.S. 575, 616, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

The trial examiner held that the reference to serious harm was a per se violation of the Act. Quite properly, the Board did not adopt this theory. Instead, emphasizing that the company wrote the letter during a period when it discharged two union activists,[3] the Board concluded that the letter and the discharges were related instances of anti-union conduct. It took the position that because the company provided no alternative explanation of what was meant by "serious harm," the employees could have believed that the discharges were the type of harm to which the letter referred.

■ The Board's rationale, while ingenious, rests on speculation. The General Counsel did not present any evidence to show the letter was interpreted in the way the Board suggests. Nor does the evidence show any relationship between the "serious harm" statement and the discharges other than that both occurred during an organizational campaign. Standing alone, this coincidence is insufficient to impart a sinister meaning to the otherwise protected language of the letter. Cf. NLRB v. Aerovox Corp., 435 F.2d 1208, 1211 (4th Cir. 1970); NLRB v. Greensboro Hosiery Mills, Inc., 398 F.2d 414, 417 (4th Cir. 1968).

In sum, because the letter on its face contained no threat of reprisal and because the record contains no evidence of company conduct that clearly shows the "serious harm" statement was intended to be, or was, interpreted by the employees as a threat, we hold that the statement was protected by § 8(c) of the Act. Accordingly, we deny enforcement of that part of the Board's order dealing with the § 8(a)(1) charge.

3. One employee was discharged on May 27, 1970; the letter containing the serious harm statement was dated June 16, 1970; and the second employee was discharged June 24, 1970.