**E. I. DU PONT DE NEMOURS AND COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–2362.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1973.

Decided July 9, 1973.

James A. Harper, Jr., Richmond, Va. (Francis V. Lowden, Jr., Anthony J. Obadal and Hunton, Williams, Gay & Gibson on brief, Richmond, Va.), for petitioner.

Robert Sewell, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Acting Asst. Gen. Counsel, and Margery E. Lieber, Atty., N. L. R. B., on brief), for respondent.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Petitioner (the company) has requested this court to review and set aside an order issued by the NLRB. The Board has cross-appealed for enforcement of the order. The Board found that petitioner had violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and § 158(a)(3),[1] by threatening certain employees and by discriminating against them because they chose to be represented by a union in a Board-conducted election. The order resulted from the discharge of one James Hilton Harrell instead of transferring him to another work group as was the petitioner's long standing practice. The Board's order requires petitioner to reinstate Harrell to his former employment status, without prejudice to his seniority or other rights and privileges, and to make him whole for any loss of pay as a result of his discharge. We are of opinion that the Board's order is supported by substantial evidence and should be enforced.

In 1959, petitioner opened its plant in Florence, South Carolina. The whole plant was non-union and remained so until the fall of 1971. From the beginning, the company advanced its employees through a seniority and progression system. The plant was divided into various work unit groups and employees were placed in job levels, for promotion and pay purposes, ranging from I (lowest) to VIII (highest). The employees would acquire plantwide seniority from the time they were hired and work group seniority from the time they were placed in a certain work group. By using both types of seniority, an employee

---

1. The relevant parts of the statute are:

§ 158(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title
. . . ;

\* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

could advance not only within his own work group but could bid for transfers to other work groups within the plant. In the event of a layoff within a work group, an employee's work group seniority controlled who left the group. Although the employee may have lacked sufficient seniority to retain employment in his work group, he was permitted to "bump back" or "roll back" to a plantwide labor pool, and by exercising his plantwide seniority, he could displace employees within the pool having less plantwide seniority.

Promotion practices differed slightly in two of the work unit groups, the general mechanical group and the control equipment or control mechanics group. In those groups, employees who sought to advance up the pay scale were required to undergo a series of tests. If a trainee failed his first progression test, he was rolled back to his former job. However if he passed his first test and subsequently failed a future progression test, he was rolled back into the plant labor pool where he might exercise his plant seniority to enter another work group.

In early 1971, the control mechanics sought to be designated as a separate bargaining unit within the plant and to be represented by the union. The company opposed this move. On August 27, 1971, the Board decided the control mechanics were entitled to a representation election as a separate bargaining unit. The election was scheduled for September 23, 1971.

Concerning the events that took place before the election, the Administrative Law Judge and the Board found that on September 21, 1971, two days before the election, the control mechanics were required to attend a company-called meeting in the plant conference room. During the meeting, they were addressed by the plant manager. There was testimony to the effect that he told the control mechanics that the union was not needed and that if it came in, all their present benefits, including roll back rights, would have to be negotiated from the bottom up. There was also evidence they were told the company would hire and fire from the gate with respect to their work group, and that if one of them failed a progression test, he would have no right to be rolled back. The Board found that these and other statements made by petitioner's supervisors constituted coercive threats in violation of 29 U.S.C. § 158(a)(1), Sec. 8(a)(1) of the Act.

The question of whether or not the above actions were coercive is a factual one. Being a factual issue, the findings of the Board must be upheld if they are supported by substantial evidence. N. L. R. B. v. Aerovox Corporation of Myrtle Beach, S. C., 435 F.2d 1208 (4th Cir. 1970); N. L. R. B. v. Lester Brothers, Incorporated, 337 F.2d 706 (4th Cir. 1964). It is true that an employer has a right to communicate his general views about unionism to his employees, but these communications cannot contain threats of reprisal. N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed.2d 547, reh. den. 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123. In the present case, we are of opinion that the Board's finding that petitioner made coercive threats to the control mechanics is supported by substantial evidence.[2] Reasonable

---

2. The Administrative Law Judge and the Board obviously believe that certain other statements made by petitioner's supervisors in response to questions from employees were also coercive. In response to questions from some employees concerning the effect of unionization on the control mechanics' roll back rights, the supervisors either stated they did not know, or that such rights were subject to negotiation, or both.

We do not believe that the above statements were coercive. Such statements were at the most predictions based on objective facts as to the effect of unionization. They did no more than point out that roll back rights were negotiable, and did not say or imply that they would be

inferences to be drawn from the statements of an employer are for the Board to determine. See *Aerovox,* supra; Hendrix Manufacturing Company v. N. L. R. B., 321 F.2d 100 (5th Cir. 1963); N. L. R. B. v. Electric Steam Radiator Corporation, 321 F.2d 733 (6th Cir. 1963).

The representation election was held on September 23, 1971, and the union won. On October 1, 1971, the union was certified to represent the control mechanics. On October 25, 1971, Harrell,[3] a control mechanic trainee, failed a progression test. Under the prior established policy, Harrell would have been rolled back to his prior work group or to the plant labor pool. However, because the control mechanics were now represented by a union, the company took the position that their roll back rights were negotiable matters to which they were no longer entitled.[4] The company then discussed Harrell's position with the union. No agreement was reached, and Harrell was discharged on November 26, 1971. From these facts, the Board found that the company had violated 29 U.S.C. § 158(a)(3) and (1), Sec. 8(a)(3) and (1) of the Act, by discriminating against certain of its employees in order to discourage union membership.

In order to find a violation, by an employer, of 29 U.S.C. § 158(a)(3), three requirements must be met. These are: (1) employer discrimination as to hire or tenure of employment or any term or condition of employment; (2) a resulting encouragement or discouragement of membership in a union; and (3) anti-union motive. N. L. R. B. v. Great Dane Trailers, 388 U.S. 26, 32–33, 87 S. Ct. 1792, 18 L.Ed.2d 1027.

By finding that the petitioner had violated § 158(a)(3), the Board necessarily found that Harrell's roll back rights were a term or condition of employment. Since roll back rights had existed since 1959 and had been granted to all employees, we agree with the Board on this point. Next, we believe that a finding is justified that the company did discriminate against Harrell by denying him his roll back rights. Here, the petitioner and the union discussed only the rights of Harrell and postponed discussion of the roll back rights of the rest of the control mechanics.[5] At the time Harrell was discharged, he was the only employee in the plant who had lost his roll back rights, the company and the union having by acquiescence or agreement postponed the discussion of the roll back rights of the rest of the control mechanics at least until the question of Harrell was disposed of. We further believe the Board was justified in finding discrimination in Harrell's discharge, which had the effect of discouraging other employees from seeking union representation. Cf. Olin Mathieson Chem. Corp. v. National Labor Relations Board, 232 F. 2d 158 (4th Cir. 1956), affirmed 352 U. S. 1020, 77 S.Ct. 587, 1 L.Ed.2d 562 (1957); Stark Ceramics, Inc. v. N. L. R. B., 375 F.2d 202 (6th Cir. 1967); N. L. R. B. v. Zelrich Company, 344 F.2d 1011 (5th Cir. 1965). With reference to the third requirement of anti-union motive, we are of opinion that the denial of roll back rights to Harrell, having not bargained with respect to all roll back rights for the bargaining unit for a reasonable time, and in a change of long established policy which adversely affected only the one employee, justify an infer-

---

taken away. See *Gissel,* supra, 395 U.S. at 617–618, 89 S.Ct. 1918. The responses of the supervisors were nothing more than candid answers to natural questions from the employees. No threats were either expressed or implied.

3. Harrell was a member of the bargaining unit represented by the union, but was not a member of the union.

4. The company continued to allow roll back rights to the rest of the employees in the plant. The plant was not unionized except for the control mechanics' group.

5. At the first meeting of the company and the union following the election, other subjects were discussed but they were abandoned in subsequent discussions.

ence by the Board of the requisite motive. See N. L. R. B. v. Great Dane Trailers, supra.

It should be noted that the Administrative Law Judge and the Board have alternately taken and retreated from the position that the control mechanics' roll back rights were not a bargainable issue and could not be discontinued, under any circumstances, by the company.

We disagree with this position. The roll back rights were a type of seniority and, as such, were a proper and usual subject of collective bargaining. Oneita Knitting Mills, Inc. v. N. L. R. B., 375 F.2d 385 (4th Cir. 1967). Thus, although the company might make a change affecting the roll back rights of the control mechanics, it could not before it negotiated, in good faith, for a reasonable time, with the union concerning the roll back rights of everyone in the bargaining unit. Cf. Cone Mills Corp. v. N. L. R. B., 413 F.2d 445 (4th Cir. 1969); *Oneita Knitting Mills, Inc.*, supra; N. L. R. B. v. Cone Mills Corporation, 373 F.2d 595 (4th Cir. 1967); N. L. R. B. v. Dothan Eagle, Inc., 434 F.2d 93, 98 (5th Cir. 1970); N. L. R. B. v. Citizens Hotel Company, 326 F.2d 501 (5th Cir. 1964). Here, the company and the union discussed only Harrell's roll back rights and did not reach those of the entire bargaining unit. The company should have postponed any action as to Harrell until the roll back rights of the entire unit had been determined, or at least bargained for in good faith for a reasonable time, or it should have rolled him back according to its long standing policy. If Harrell had been rolled back in accordance with previous policy, he would have been out of the bargaining unit and no longer represented by the union. The discharge of Harrell without first negotiating concerning the roll back rights of the other employees in the bargaining unit helps justify the finding that the petitioner violated § 158(a)(1) and (3). See Robert-

shaw Controls Company, Arco Division v. N. L. R. B., 386 F.2d 377 (4th Cir. 1967); Cf. N. L. R. B. v. Hertz Corporation, 449 F.2d 711 (5th Cir. 1971).

It follows that we are of opinion the Board's order is supported by substantial evidence and ought to be enforced.

Enforcement granted.