MANCHESTER MEMORIAL HOSPITAL, INC. *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS ET AL.

SHAPIRO, LOISELLE, MACDONALD, BOGDANSKI and NARUK, JS.

Argued May 9—decision released August 6, 1974

*Warren W. Eginton,* with whom was *E. Terry Durant,* for the appellant (plaintiff).

*John A. Arcudi,* for the appellee (intervening defendant Local 1199, Drug and Hospital Union, A.F.L.–C.I.O.), with whom were *Alphonse C. Jachimczyk,* assistant attorney general, and, on the brief, *Robert K. Killian,* attorney general, for the appellee (named defendant).

SHAPIRO, J.   On February 3, 1971, Local 1199, Drug and Hospital Union, A.F.L.–C.I.O. (hereinafter referred to as the union) filed a petition with the Connecticut state board of labor relations (hereinafter referred to as the board).   The petition, seeking certification of the union as the exclusive bargaining representative for a unit of employees in the dietary department of the Manchester Memorial Hospital (hereinafter referred to as the hospital), was heard on March 9, 1971, by the board pursuant to § 31-106 (b)[1] of the General Statutes.

---

[1] "[General Statutes] Sec. 31-106.   ELECTION OF REPRESENTATIVES. . . . (b) When it is complained by an employee or his representative that there is a question or controversy concerning the representation of employees, the board shall hear the matter and order an election, or use any other suitable method to ascertain such representatives.   When it is complained by an employer or his

On March 19, 1971, the board issued its memorandum and direction of election in which it held: (1) that the unit requested by the union, as modified by the inclusions and exclusions stipulated to at the hearing of March 9, 1971, was an appropriate unit for bargaining under § 31-106 of the General Statutes; (2) that an election among the employees in the unit found to be appropriate would be conducted by the board within twenty days of the issuance of the memorandum and direction of election; (3) that the decision as to the status of the hospital's executive chef, Dennis J. Klotzer, would be reserved for determination at a later date; and (4) that the hospital's executive chef would be permitted to vote in the election, subject to challenge, but would not be permitted to engage in any activities in the election campaign. By virtue of this order, the hospital was precluded from March 19 until April 5, 1971, from using the services of its executive chef to: (1) attend supervisory meetings where the election and campaign strategies were discussed; (2) provide information as to the employees' reactions during the campaign; (3) answer questions regarding the election directed to him by the employer or

representative that there is a question or controversy concerning the representation of employees between two or more labor organizations, the board shall hold a public hearing on such complaint after due notice. If after hearing the board finds that there is a controversy concerning the representation of employees, it may conduct an election or use any other suitable method to ascertain such representatives. . . ."

[2] "[General Statutes] Sec. 31-101. DEFINITIONS. . . . (13) 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment . . . ."

by the employees in the unit; or (4) enforce hospital rules which validly restrict organizational activity during working hours and in working areas.

On April 5, 1971, the board issued a supplemental decision and amendment of direction of election in which it classified the executive chef as a "supervisor" within the meaning of § 31-101 (13) of the General Statutes,[2] ordered him excluded from the bargaining unit and determined that the restrictions placed on his campaign activities by the decision of March 19, 1971, should be removed.

On April 8, 1971, the election was conducted by the board and won by the union. The hospital filed objections to the election pursuant to § 561-11 of the general regulations of the board and on April 30, 1971, and May 5, 1971, a hearing was held before the board. On June 30, 1971, the board issued an order and certification of representative in which the objections to the election were overruled, and the union was certified as the exclusive bargaining representative in the unit previously found to be appropriate. On or about July 8, 1971, the union requested that the hospital commence bargaining with the union but the hospital refused to comply.

On September 22, 1971, the board issued a decision and order in which it concluded as a matter of law that the hospital's refusal to bargain with the union violated § 31-105 (6)[3] of the General Statutes and ordered it to bargain in good faith upon request. The hospital then petitioned the Superior Court in

[3] "[General Statutes] Sec. 31-105. UNFAIR LABOR PRACTICES. It shall be an unfair labor practice for an employer: . . . (6) to refuse to bargain collectively with the representatives of employees, subject to the provisions of said section 31-106 . . . ."

Tolland County to set aside the board's certification of representative, the April 8, 1971 election and the order of September 22, 1971, to bargain in good faith. That petition was dismissed in a judgment filed on January 31, 1973. From that dismissal, the hospital has appealed to this court.

By its assignment of errors and the arguments in its brief, the hospital makes three claims. The first is that the court erred in reaching the conclusion that "[t]he order and action of the defendant Board was not unreasonable, arbitrary, illegal, or in abuse of discretion." "The trial court's conclusions are tested by the finding; *State* v. *Villafane,* 164 Conn. 637, 638, 325 A.2d 251; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; and they must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 205–206, 292 A.2d 899; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500." *Roby* v. *Connecticut General Life Ins. Co.,* 166 Conn. 395, 397, 349 A.2d 838. We have applied this test to the conclusion attacked by the hospital and find that it must stand. The finding contains no facts which are legally or logically inconsistent with the conclusion. It does, however, indicate that the executive chef was ordered to refrain from any election campaign activities because of the uncertainty of his status as either an employee or a supervisor. It further indicates that on April 5, 1971, the board did determine that the "Executive Chef is a 'supervisor' within the meaning of Section 31-101 (13) of the General Statutes," excluded him from the bargaining unit and

removed the restrictions concerning campaign activities imposed on March 19, 1971. Accordingly, there is no inconsistency and no application of an erroneous rule of law. The hospital's claim that the trial court erred in reaching the complained-of conclusion must fail.

We next turn to the claim of the hospital that the board "violated the . . . [hospital's] federal and state constitutional right to freedom of speech and expression." In its brief, the hospital argues that when the board silenced its principal supervisor during the election campaign it effectively silenced the employer. We do not agree.

The trial court concluded that the order of the board was "not unreasonable, arbitrary, illegal or an abuse of discretion." It has been demonstrated above that this conclusion must stand. Furthermore, in the context of a labor election campaign wherein the status of the executive chef was uncertain, an order such as that issued by the board cannot be fairly characterized as an impermissible burden on the employer's freedom of speech. In such campaigns the essence of the employer's first amendment right to be protected is the employer's freedom to communicate to his employees his views about unionism or any of his specific views about a particular union. See *NLRB* v. *Gissel Packing Co.,* 395 U.S. 575, 618, 89 S. Ct. 1918, 23 L. Ed. 2d 547, rehearing denied, 396 U.S. 869, 90 S. Ct. 35, 24 L. Ed. 2d 123; *N.L.R.B.* v. *Henriksen, Inc.,* 481 F.2d 1156, 1162 (5th Cir.); *Amalgamated Local Union 355* v. *N.L.R.B.,* 481 F.2d 996, 1004, n.13 (2d Cir.); *E. I. DuPont de Nemours & Co.* v. *N.L.R.B.,* 480 F.2d 1245, 1247 (4th Cir.); *Singer Co.* v. *N.L.R.B.,* 480 F.2d 269, 271 (10th Cir.).

"Neither the [Labor Management Relations] Act[4] nor the Constitution tolerates an abridgement of the right of an employer to communicate with his employees so long as he does not attempt to infringe the rights of his employees as guaranteed by the Act." *N.L.R.B.* v. *Bangor Plastics, Inc.,* 392 F.2d 772, 775 (6th Cir.).

In its brief the hospital cites several cases for the proposition that "it has long been recognized that publicizing the facts respecting a labor dispute by pamphlet, banner or word of mouth is regarded as a right of free communication guaranteed by the Federal Constitution," but the uncontested facts of this case in no way suggest that the order of the board foreclosed the hospital's right to utilize any of these means to communicate its views to its employees. The hospital admits that no Connecticut cases characterize orders such as the one issued by the board in the present case as a "deprivation of an employer's constitutional freedoms of speech and expression," but it then asserts that "numerous cases decided under the Federal Act have done so." It cites none of these "numerous cases" in its brief, and our research has failed to uncover them elsewhere. Those cases which it does cite are clearly distinguishable from the fact pattern of the present case and do little to advance the claim of the hospital. On the basis of the uncontested facts and applicable law, we therefore conclude that the order of the board did not violate the hospital's federal or state constitutional right to freedom of speech and expression.

[4] Subsection 8c of the Labor Management Relations Act of 1947, 29 U.S.C. 158c, was enacted for the sole purpose of protecting the employer's right to free speech in labor matters. U. S. Code Congressional Service, 80th Congress, First Session, 1947, p. 1151.

The hospital's final claim is that the board failed to provide the requisite "laboratory conditions" within which to conduct an election. There is no assignment of error, however, directed toward this issue and we are not bound to consider any error not specifically assigned. Practice Book § 652; *Baker* v. *Baker,* 166 Conn. 476, 490, 352 A.2d 277; *Shakro* v. *Haddad,* 149 Conn. 160, 163, 177 A.2d 221; Maltbie, Conn. App. Proc. § 167.

There is no error.

In this opinion the other judges concurred.